## No. 9858.

ALEXANDER MOSES VS. LOUISVILLE, NEW ORLEANS AND TEXAS RAILROAD COMPANY.

It is the legal duty of railway companies, as carriers of passengers, to provide platforms and other accommodations for passengers who desire to take these trains at stations where passengers are usually taken on or put out; to furnish safe and proper means of ingress and egress to and from trains, platforms, station approaches, etc., and to furnish at night sufficient lights to securely guide the way and the steps of their passengers, as well as servants necessary to inform them and instruct them as to the location of the trains and as to the usual and safest mode of reaching them.

This rule, which courts must rigidly enforce, is violated by a railroad company which, for any reason, leaves one or more coaches of a passenger train outside of the depot yard or station grounds at which the train stops to take on and put out passengers, and which thus obstructs at night the lights so placed by the city as to lighten both sides of the track on which the train stands.

Hence, a railroad company is responsible for injuries received by a passenger seeking to board one of its trains at night, who finds no one to inform him how to reach the sleep-

ing car attached to the train, which is left standing outside of the yards, and to which a sidewalk, erected by the company under a contract with the city, leads in a direct route, which the passenger follows, and from which he falls by reason of defective or insufficient lights at that part of the station approach.

It is not contributory negligence in a passenger who goes outside of the station yard to enter the coach which he desires, when that coach is left standing outside of such yard, and when a sidewalk, erected by the company and under its control, leads directly to said coach.

Damages allowed by a jury will not be increasd on appeal, unless manifestly inadequate.

APPEAL from the Civil District Court for the Parish of Orleans. Lazarus, J.

D. C. & L. L. Labatt for Plaintiff and Appellee.

Farrar & Kruttschnitt for Defendant and Appellant.

The opinion of the Court was delivered by

POCHÉ, J.    Plaintiff claims damages in the sum of $20,000 for personal injuries received by him while boarding a train of the defendant company, at the city of Vicksburg, Miss., during the night of January 14, 1885; which he attributes to the negligence and want of care of the defendant and of its employees.

The defense is a general denial, a special denial of negligence on the part of the company, and a charge of contributory negligence on the part of plaintiff.

The jury found in favor of plaintiff, to whom they allowed $1000 damages.    Defendant appeals, and plaintiff prays for an increase of the allowance for damages in the sum of $7000.

The undisputed facts of the case are as follows:

Plaintiff, who is a resident of New Orleans, purchased a ticket at the defendant's office in Vicksburg, from that point through to this city, to be used at the date above stated, on a train leaving Vicksburg at 9 o'clock at night.

Within twenty minutes of train time he reached the station or depot of the company, and remained with a companion who was to make the same trip, in a waiting-room within the building used as a passenger station, until the arrival of the train.

That building is situated at the northwestern corner of a square of ground owned and occupied by the company for its purposes as a common carrier.    The south-bound trains enter the depot yard at the intersection of two streets known as Levee and Depot streets; the first of which runs north and south, and the latter east and west.    Down to that point the railroad track is on Levee street, and thence it diverges from that street, in a southeastern course, into the square of ground

owned by the company. The depot yard, which is bounded on the west by Levee street, and on the north by Depot street, is enclosed by a fence, leaving at the junction of the two streets an opening through which the trains enter into the yard. On Levee street the fence extends from the station-house, which fronts thereon, to the intersection of Depot street. The depot yard, which is on both sides of the track, is usually approached by passengers, either on Depot or Levee streets, through gates provided for the purpose; the Levee street gate being situated near the station-house. It was at that gate that plaintiff and his companion alighted from a carriage, and through it they walked into the depot yard and into the waiting-room or ticket office, which opens into the yard in the rear or east end of the building used as a station. The depot yard, on that side of the railroad track, is a wooden platform, several feet above the ground or level of the adjoining streets, and extending as far as the street proper on Levee street, the sidewalk being of the same grade and of the same material; and marked out of, or separated from, the railroad yard proper by the fence above described—and ending on to the Depot street corner. The construction of the sidewalk by the railroad company, as well as its dimensions and grade, were stipulated in a contract between the city council of Vicksburg and the company.

Now, it happens, owing to the length of some of the trains, when going southward, that one, and sometimes two, of the passenger coaches are stopped and left standing outside of the depot yard, across Depot street, and that on the night of the accident to plaintiff the sleeping car, which was the last coach of the train, was entirely outside of the yard. And it was in his attempt to reach that coach, with a view to secure accommodations for the night, that plaintiff met with the accident on which he predicates his claim.

As he stepped out of the waiting-room on the arrival of the train, he saw that the sleeper was at the end of the train, and walking towards it he passed out of the gate herein above described near the station, to the sidewalk and on the latter, at the end of which he fell to the ground and broke one of his legs.

From that period of the case, all other facts bearing on the issues involved are hotly contested, and the truth must be sought out of a mass of conflicting testimony.

Our reading of the record has satisfied us that the preponderance of the evidence shows:

That the principal cause of the accident must be attributed to the lack of sufficient light to guide the passengers in their efforts to board

the train, and that it was owing to the darkness which prevailed that plaintiff fell off the sidewalk.

The effect of a city gas-light, situated on Depot street, at the left side fence of the yard, was entirely lost to persons who were on the right hand side of the train, by the sleeper which stood in its way and entirely out of the depot yard; and the railroad lamps, in which oil was burned, and which were situated immediately around the station-house, were not strong enough to be of any use to persons walking to the rear of the train on the sidewalk.

But at this point and in this connection must be noted the charge of contributory negligence made against plaintiff by the defendant, who says that the usual and the safe mode of boarding its trains was to walk directly east from the waiting-room to the track, only a short distance, then to ascend the steps of the first coach in the way, and thence to walk through two or more coaches, as the case might be, to the sleeper, in case the passenger desired sleeping accommodations; and that the existence of the fence above described was a sufficient indication of the extent of the depot grounds, and a sufficient caution to passengers not to venture outside if they wished to avail themselves of the company's protection. It is also urged that the city sidewalk from which plaintiff fell, was no part of the company's platform, that the company had no control over the same, and was therefore not responsible for any accident which might occur thereon or therefrom.

The first answer to that contention is found in the record, which shows that plaintiff who had never before been at the place, and had arrived there for the first time on a dark night, with very dim lights to guide his steps, was not aware of the distribution of the road's appliances and facilities, and that no employee or servant of the company offered to instruct or guide him in the proper course to pursue. Hence he cannot be considered as negligent or legally imprudent in following the route which in his judgment was the safest and the shortest for the purpose of reaching the sleeper which was his objective point.

The second answer comes also from the record which shows that passengers approached and left the trains indifferently on either side of them; it appears that the driver of the hack brought plaintiff and his companion, without instructions from them, or either of them, to the sidewalk in question; and that carriage drivers, watching for customers on the arrival of trains, stood on either side, of the depot yard, the very hackman who helped to raise plaintiff after his accident was standing on that side with his carriage in expectation of customers.

From our understanding of the contract between the city and the company as to the construction of the sidewalk, we consider that the defendant is under the legal obligation to keep it in good order and repair as one of the approaches to its station. It is used by the company to receive all baggage, whether going to or coming from trains, and an inclined platform connects it with the street below, at the gate through which plaintiff went in and out of the depot-yard on the night of the accident. It is clear to our minds that the defendant would be responsible for any injury occasioned on that sidewalk by reason of a rotten plank, to any of its passengers, either going to or leaving one of its trains. It is indeed used by it as one of its appurtenances.

But in law and in justice, why should this company be heard to charge negligence, imprudence or recklessness to any of its passengers for going out of its inclosures to reach the coach which he desires, when that coach itself is out of the company's yard, and actually intercepts the street which crosses at that point? From the description which we have already given of the grounds, it is undeniable that if a coach of the company had not stood in Depot street, the city gaslight, the best and the only gaslight on and around the grounds, would have been amply sufficient to lighten the sidewalk, separated from it only by the train, and it is as clear that if the sleeper had stood within the depot yard, plaintiff would have gone directly to it, without going outside of the yard; and in either case the accident would not have occurred. Hence, the conclusion is inevitable that the accident is solely attributable to the fact that the sleeping car was not pulled inside of the yard; and that in consequence of its standing in the way of the city gaslight, it deprived the depot and its approaches of the light necessary to securely guide the passengers who desired to take the train, and to occupy that identical coach. It is not proper management in a railroad company to require passengers to go through a series of coaches, and to pass over several platforms, in order to reach the particular coach which they may desire to occupy, because that coach is left outside of the depot yard, which contains the balance of the train to which it is attached. Turner vs. Railroad Company, 37 Ann. 648.

The management of the company, on the night of the accident, including the distribution of its lights around the station, the location of its train, with the most important coach left standing outside of the depot yard, thus blocking up an important thoroughfare and shutting out the best light around the premises; its omission to provide sufficient lights on the right hand side of the train, particularly

at the end of the sidewalk pavement, hereinabove described; its omission to instruct, by servants or other employees, its passengers as to the safest course to pursue in order to reach the sleeping car of the train, are so many distinct and reprehensible violations of the rule recognized as indispensable to the safety of travelers, and so uniformly enforced in jurisprudence, and which requires railway companies "to furnish safe and proper means of ingress and egress to and from trains, platforms, station approaches," etc., and "to furnish at night ample and sufficient lights to safely guide their passengers to and from such trains, platforms, station approaches," etc., and which, under those circumstances, exacts the obligation of procuring the employees and other servants necessary to inform passengers of the correct location of their trains, and to instruct them as to the safest mode of reaching the same. Peniston vs. Railroad Company, 34 Ann. 777, and authorities therein cited.

The courts of last resort in most of our sister States have, with remarkable uniformity, rigorously enforced the rule, particularly in its intended and humane protection of persons whose business or other wants require their presence around railroad stations at night. While it is true that the rule is intended to afford protection to the public in general, it stands to reason, and it is consonant with justice, that it should apply with exceptional fitness to passengers on the trains of the company, or at its stations, with the object of boarding one of its trains. A lucid writer on railroad jurisprudence has formulated the rule as follows: "It is also the duty of railway companies, as carriers of passengers, to provide platforms and other reasonable accommodations for such passengers at the stations upon such roads at which they are in the habit of taking on and putting out passengers. Their public profession as such carriers is an invitation to the public to enter and to alight from their cars at their stations, and it has been held that they must not only provide safe platforms and approaches thereto, but they are bound to make safe, for all persons who may come to such stations, in order to become their passengers, or who may be put off there by them, all portions of their station grounds reasonably near to such platforms; and for not having provided such stational accommodations and safeguards, railway companies have frequently been held liable for injuries to such persons." Hutchinson on Carriers, pp. 417, 418.

Another writer on the same subject has very succinctly traced a line to be followed by railway carriers, as follows: "It is the duty of the corporation to have its stations open and lighted, and its servants

present for the accommodation of those who may wish to leave its trains or to depart by the same." Thompson's Carriers of Passengers, p. 108.

Numerous decisions of courts of last resort have contributed the material for the rules thus formulated: and it may not be amiss to refer to a few of such adjudications.

A passenger, waiting for a train, found the station so uncomfortable by reason of tobacco smoke that she undertook to enter the cars before they were drawn up to the platform from which passengers generally entered them, and by reason of which she was injured, recovered damages for such injuries. McDonald vs. Railroad, 26 Iowa, 124.

In another case, damages were allowed to a person who intended to board a train, and who was injured while running along the line of the road to reach the train in time, on account of darkness. Martin vs. Railway, 16 Com. B., 179.

It has also been held that: " When, by reason of the insufficiency of the station, or length of the train, or negligence in the operation of it, passenger cars are brought to a stand at places where there is no landing or other conveniences for getting off the train, if it is reasonable to suppose that no better opportunity will be granted for this purpose, the passenger may alight, although the position is inconvenient or slightly dangerous. If the company's servants have given the passenger an express invitation to alight, or their conduct is such as to imply an invitation, the passenger will be justified in making the attempt." Thompson's Carriers of Passengers, p. 268, § 4—and authorities cited by him.

The following rule also rests on undisputed judicial sanction:

" Wherever a railroad company is in the habit of receiving passengers, whether at a station or some point outside, or if by the regular operations of trains it is necessary to traverse portions of the premises outside of the station-house, passengers have a right to assume that such parts of the premises are in a safe condition for such purpose, even on a dark night." Thompson's Carriers of Passengers, p. 269— and decisions therein quoted.

In the case of Railroad Company vs. Thompson, Southern Reporter, Vol. 1, p. 840, the Supreme Court of Mississippi, in sustaining a verdict of $15,000 damages against this very company, for injuries sustained in one of their station yards by a person who had gone there on business, and was hurt while passing through a gap in a freight train usually open for people to pass through, used the following vigorous language: "Appellant is answerable for damages in the cause unless

a railroad company, in the prosecution of its business, may set a trap" for people, and after a man has been caught in it and killed or injured, escape liability by assuming the position that he ought to have had more sense than to have been deceived or misled by the contrivance."

In the instant case, the record shows that during the winter months one or more of the night train coaches were not pulled in the depot yard, but were left standing across the intersecting street, that trains were entered indifferently on the right and left hand sides thereof, that the sidewalk wooden pavement which was flush with the station platform had been constructed by the defendant company as part of the considerations for the franchises obtained by it from the city, and no evidence shows that the control of the same has ever been resumed by the city. Quimby vs. Boston and Maine R. R. Co., 69 Maine, 340.

It also appears that the sidewalk in question is one of the important immediate approaches to the company's station, it being used as the only place for the handling of the railroad baggage; that it afforded the most direct route for plaintiff to reach the sleeping car, and that no servant of the company informed him otherwise, whereas a large gate wide opened gave him free access to it. All these circumstances must be construed as an invitation and an inducement held out to him by the company to use the sidewalk as he did. He is, therefore, fully justifiable in law for having followed the course which was thus so naturally suggested to him by the acts of omission and commission of the company.

Hence, he is not amenable to the charge of contributory negligence. And the facts herein recited lead, on the other hand, to the clear conclusion that the company must be held responsible for the accident. But we do not feel warranted to favor plaintiff's prayer for an increase of damages. The verdict of a jury fixing the *quantum* of damages must not be disturbed on appeal unless it be manifestly erroneous and palpably inadequate. The evidence on this point in the record does not justify such a conclusion. Hence the verdict must remain unchanged.

Judgment affirmed.

---

### DISSENTING OPINION.

FENNER, J. With due respect to the able and vigorous opinion adopted by the majority of the Court, I am unable to assent to its conclusions.

At its station in Vicksburg, Miss., the defendant railway company had provided depot grounds, with appropriate buildings, for the reception and accommodation of passengers, which were lighted and

wholly enclosed by a substantial fence to designate the boundaries of the company's premises, Through this inclosure, by an opening in the fence just wide enough to admit the train, defendant's tracks ran.

One side of defendant's enclosure was bounded by Levee street, a public street of the city of Vicksburg, running towards and extending to the railroad, and outside of the enclosure and running along the fence was the sidewalk or banquette of the street, which was an elevated wooden structure, built by defendant under direction and instructions of the city authorities, and forming the public highway for foot passengers. This sidewalk intersected and crossed the railroad outside of defendant's grounds.

Arriving to take the train, plaintiff entered defendant's enclosure through a gate in the fence on Depot street, at a point near the corner and farthest away from the track, and went into the passenger waiting room, where he awaited the arrival of the train.

What was the plain significance of this inclosure and of this waiting room within it, fronting the railroad track? What was the object of them, and why did plaintiff enter them? Obviously for the purpose of awaiting and boarding the train. Would anyone have supposed, under such circumstances, that he was expected, in order to board the train, to go back to the gate by which he had entered, and then approach the train by the public street? I think not.

The train arrives. The engine and several passenger coaches enter the enclosure, and halt in front of the waiting-room; but the sleeper and part of the coach immediately in front of it are left outside the fence.

What was the course plainly indicated to the waiting passengers? Clearly, to go forward to the train and there to enter one of the coaches and pass back to the sleeper, or else to have sought information as to how to reach the sleeper. Such was the plain invitation and inducement held out by the company. If, on reaching the train and passing along it toward the sleeper, he had encountered an open gate at the track and had passed through it, and been hurt, he might claim that such an open gate at such a point, with the sleeper beyond it, was an inducement or invitation held out by the company to pass through it. But plaintiff went away from the train to a gate more remote from the track than the waiting-room, entered the public street, and chose to pass to the train by that route, outside of the company's grounds. In so doing, I consider he acted on his own responsibility, in opposition to the plain course dictated by the surrounding circum-

42

stances, and passed out of the company's protection, which was no more responsible for his safety than for that of any other passer on that public sidewalk.

The complaint made of absence of employees to give directions has no force. No directions were necessary to prompt a passenger, in a waiting-room thus enclosed, to pass to the train which has halted in front of him and within the enclosure, for the purpose of boarding it.

The gate to which plaintiff went was the passage way for arriving as well as departing passengers, and for all persons going in or out of t enclosure on that side; and had any employee been there he would naturally have taken plaintiff to be an arriving passenger, or other person going away from the depot.

If it were negligence in defendant to halt its train in such manner as to leave its sleeper outside the enclosure, and thus to require its passengers to enter another car and pass through it to reach the sleeper, that might render it liable for accidents happening in such passage; but it has no causal connection with an accident resulting from the unusual course pursued by plaintiff in this case, which was in evident opposition to that contemplated by defendant and indicated by all the surrounding circumstances.

I consider the law well settled that when a party disregards the sufficient provisions made by the railway company for ingress and egress to and from its trains, and chooses to adopt a different method, he does so at his own risk. As was said in a leading case: " We hold, on these principles, that the company's liability could not be fixed for the injury consequent on the choice of a passenger, in disregard of the provisions made by it for his safety and convenience. It was not negligence on the part of the company that it did not, by force of barriers, prevent the parties from leaving on the wrong side. People are not to be treated like cattle; they are presumed to act reasonably in all given contingencies, and the company had no reason to expect anything else in this case." Penn. R. R. Co. vs. Zebe, 33 Pa. St. 318; id. 37; id. 420.

These principles are fully applicable here, where the company had actually provided *barriers* within which plaintiff had been received for the purpose of entering the train, from within which he could have entered it, and was manifestly expected and intended to enter it. Plaintiff's act in going out of those barriers and seeking to get to the train by the public street, was a voluntary disregard of the provisions made by the company, and the consequent injury should not be attributed to the company.