No. 13,474.

CHARLES H. AIKEN VS. THE SOUTHERN PACIFIC COMPANY ET ALS.

| 104 | 157 |
|-----|-----|
| 110 | 405 |
| 111 | 397 |

| 104 | 157 |
|-----|-----|
| 118 | 819 |
| 118 | 820 |
| f118 | 821 |
| 118 | 822 |

SYLLABUS.

The fact that a passenger upon a ferry boat may be thrown down and have his leg broken, by the striking of the boat at the approaches to the landing, is entirely consistent with the supposition that the boat may have been landed in a careful and prudent manner.

When the evidence shows that it was so landed a plaintiff can not recover damages.

APPEAL from the Civil District Court, Parish of Orleans — King, J.

*E. A. O'Sullivan* and *Solomon Wolff* for Plaintiff, Appellee.

*Denegre, Blair & Denegre* and *Victor Leovy* for Defendants, Appellants.

STATEMENT OF THE CASE.

The opinion of the court was delivered by

NICHOLLS, C. J. Plaintiff prays for judgment against the Southern Pacific Company and Morgans' Louisiana & Texas Railroad and Steamship Company, *in solido,* for eight thousand dollars, based on allegations that, on or about the 4th day of April, 1898, he, as a passenger, entitled to transportation by the defendant companies, which are jointly conducting the business of a public carrier engaged in transporting freight and passengers, for hire, by rail or otherwise, entered the depot of the said company, in the City of New Orleans, to obtain as a passenger the transportation to which he was entitled, and was, by the officers of the said companies, and the rules and regulations required and directed to take passage on a transfer boat belonging to the said companies, which boat was to take him and his fellow passengers across the Mississippi river from the depot of the company at New Orleans to the depot of the defendant companies at Algiers, where the trains of the defendant companies were waiting to transport him and his fellow passengers to their various points of destination.

That the said boat reached the Algiers landing about 9 P. M., and through the negligence of the said companies, their officers and agents, was improperly handled, and struck the wharf or landing with such force as to violently throw him down and cause him to break his leg about three inches above the ankle.

That, as the result of said injury, he was confined to his bed until September 1st, 1898, and was still unable and did not know when he would be able to resume working at his usual occupation.

That, at the time of his injury, he was earning a salary of $1800 per year and his expenses, which gave him an annual income of $5600; that one year's service and income had already been lost, and his physicians were not willing and not able to state when he would be able to go to work, besides there was grave and serious doubt that he would be able again to obtain a situation, which his employer was compelled otherwise to fill and which situation was not still vacant.

That he had already paid and incurred bills for medical attention and medicines amounting to four hundred dollars, and the end was not yet here.

That the pain and suffereing and mental anguish which he had endured, and was still enduring, and the probable loss of his position, and the loss of the opportunities which he had suffered by reason of his enforced idleness amounted to five thousand dollars.

That he had not, in any manner, contributed to the injury which he sustained, but that the same was caused by the neglect and fault of the defendant companies, their officers and agents, and by the imperfect and faulty provisions which the said company had made for the care of its patrons.

Defendant answered, pleading the general issue and specially denying the accident referred to or intended to be referred to, was due to any fault or negligence on its part, or that of any of its officers, agents or employees.

The issues were tried before the court which rendered a judgment in favor of the plaintiff, for six thousand dollars, from which judgment defendant appealed.

## OPINION.

The issues in this case were decided by the court, not by a jury.

In the judgment rendered, the court says:

"The defendants run a ferry across the Mississippi river.   On the

night of April 4th, 1898, the plaintiff, a large, strong, man, weighing two hundred and ninety pounds, went on board defendant's steamboat, on the New Orleans side, and seated himself on his valise on the lower deck, a place assigned for passengers. When the boat ·reached the Algiers side, in entering the slip, it hit against the side. Plaintiff thinking the boat was landing, arose, took his valise in his hand and walked a few steps towards the edge of the boat. The boat then hit the end of the slip, where she was to land, a hard blow, the effect of which was to cause him to fall and break his leg, between the ankle and the knee. Plaintiff lost consciousness for a time from the pain; was found by the crew after the passengers had left the boat, with his leg broken, and was brought back by them to the New Orleans side. The leg is permanently injured; in fact useless, and will be so, in all probability, for the balance of plaintiff's life. There was no negligence or imprudence on plaintiff's part contributing to the accident.

The mere fact that plaintiff, acting as a prudent passenger should act, was thrown down and injured from the effect of the blow with which the boat struck the landing, is presumptive evidence that the boat was carelessly handled, and that the accident was caused by defendant's negligence. The duty is then placed upon the defendant to account, in some satisfactory manner, for the boat, on that night, striking the landing with a force so strong as to injure plaintiff, a passenger, in order to escape liability.

In this the defendant has utterly failed. It was a calm night, and the captain and crew, in substance, testify that the boat made the usual landing. They so testify, although they knew of the accident to plaintiff the night it occurred, and that the plaintiff was injured while on the boat, and while he was in their custody and charge. The court, from the evidence adduced, is of the opinion that the defendant is guilty of negligence and liable."

The plaintiff refers the court, in support of his position, to Julian vs. Steamer Wade Hampton, 27 Ann. 377; Patton vs. Pickles, 50 Ann. 857; Philadelphia R. R. Co. vs. Anderson, 94 Pa. St. 351; 39 Ann. Rep. 787; 16 Ency. 399; while defendant cites Fetter on Carriers and Passengers (page 196 and authorities), Edition of 1897; Black vs. Third St. R. R. Co., New York Supreme Court, 1896; 37 N. Y. 381 (referred to by this court in Gretzer vs. Carrollton R. R. Co., just decided); Cassidy vs. Atlantic Avenue Co., 29 N. Y. 724; Hayes vs. R. R. Co., 97 N. Y. 529; Chicago R. R. Co. vs. Hazard, 26 Ill. 373.

The judgment rendered was evidently based upon the cases in 27th Ann. and 50th Ann. referred to.

In the former case this court said:

"Common carriers are bound to carry their passengers safely and securely, and to use the utmost care and skill in the performance of their duty (Angell on Carriers, p. 568) and, of course, they are responsible for any, even the slightest, neglect." 2 Greenleaf Ev. 221. "The burden of proof is on the defendants to establish that there has been no disregard whatever of their duties, and that the damage has resulted from a cause which human care and foresight could not prevent. The captain and owners are responsible for the acts of their employees. 15 Ann. 321; 18 La. 490; 2 Ann. 634; 11 Ann. 396; 14 How. U. S. 468."

We are not called on in the present instance to discuss the abstract legal proposition as to which party carried the burden of proof, for both sides have presented their testimony, and we are in position to pass upon the rights of parties from the whole evidence, whether adduced by the plaintiff or by the defendant. We do not think that matters are at all left in doubt under the evidence; or that the issues are to be disposed of through presumptions. The record discloses, affirmatively, the absence of fault or negligence on the part of the defendant.

The plaintiff ascribes his injury to the boat upon which he was crossing the river, "having struck the wharf or landing with such force as to violently throw him down and cause him to break his leg;" and he avers that this striking was "by reason of the defendants' officers and agents having negligently and improperly handled the boat."

It may be conceded that the breaking of plaintiff's leg was due to the striking of the ferry boat at the second line of piling, making up the V, through which the boat approached the wharf, but it by no means follows from this that the boat was negligently and improperly handled.

We think the evidence fully establishes the contrary. The blows at the pilings were such as were habitually made, and no one, other than the plaintiff, was thrown from his feet or in any way injured. It is exceedingly difficult for a pilot, approaching at night, to calculate, with absolute precision, the distance of the boat from the landing, and even if he should do this the current and the wind, more or less, may,

in spite of the pilot, affect the situation. There is nothing to show error of judgment, still less, want of care, on this particular occasion. Neither the boat nor any part of it was injured, nor were the approaches to the land. Every passenger landed on the Algiers side but the plaintiff. According to plaintiff's own version, he was sitting on his valise when the boat struck the first row of pilings in the "V."

No injury was received from the plaintiff by that blow. After it was received, plaintiff rose, unhurt, from his seat. Believing (as he did) that the boat had finally landed, he rose from his seat, took up his valise, and was walking forward when the boat struck a second time, and by so doing threw him to the floor, breaking his leg. The second blow to which reference is here made was the result of the sheering off of the boat from pilings which formed the right side entrance to the "V" to those which formed the left side.

This blow was less great than the first. It is not difficult to understand how a passenger, just rising from his feet after the first blow, or one who having just risen, should be moving forward with a heavy valise to the bow of the boat, might be thrown from his balance by even a very slight second blow, and that from a special state of facts personal to himself, with which the parties in control of the boat have no relations and no knowledge, he should receive injuries.

In defendants' brief, counsel say:

"There can be no doubt, from the authorities, that in view of the necessary shocks on starting, stopping, increasing and decreasing speed, in the rapid movement of cars and vessels required by the modern public, and in view of the fact that falls constantly occur where there is little or no shock, due to careless positions of the body, or sudden failure of the muscles, slipping, stumbling, etc., there must be something more than a fall, and of adjectives of more or less strength concerning the shock to serve as a basis for the compulsory transference of a large sum of money from a defendant to a plaintiff. All are acquainted with the usual shocks on usual conveyances.

If any particular shock was unusual, why should plaintiff's witnesses (and especially plaintiff himself) fail to so state.

Plaintiff testified that he had traveled extensively, and that he had crossed several times over this particular ferry. On his first direct examination, referring to the blows received, the following questions and answers appear:

Q. "Do you remember what kind of blows they were that this boat gave; as to the strength or weakness of the blows; whether they were heavy or light blows?

A. "They were blows the same as a boat would naturally make in landing.

Q. "Are you referring to these two blows that the boat gave?

A. "Yes.

Q. "Well, was the force very great of both these blows?

A. "Well, I should say they were.

Q. "Are you a man who, at that time, was pretty strong on your feet?

A. "Yes, sir; fairly strong; as well as a man of my age would be.

Q. "What is your weight?

A. "At that time I weighed two hundred and ninety pounds—I think."

This conclusion of the plaintiff as to the force of the blows is corroborated by no one. On the contrary, it is positively disproved.

The District Court's action was evidently based on the views expressed by this court in *Julian vs. The Wade Hampton* and *Patton vs. Pickles,* but we think that they were not applicable to the state of facts disclosed by the evidence in the present case.

The injury received by Mrs. Patton, in the Pickles case, was by the breaking down of a bridge of one of the appliances of the ferry boat, which resulted in precipitating nearly all of the passengers upon it into the river. It was contended that it was the duty of a passenger, seeking to recover damages for injury received from the breaking of the bridge, to show, affirmatively, that the breaking was the result of a fault on the part of the Ferry Company, but we held that this was not the law.

The obligations of a carrier touching these matters were considered by us from a second point of view or standpoint in *Kennon vs. Vicksburg, Shreveport & Texas R. R. Co.,* 51 Ann. 604.

In both the Kennon and Pickles cases the court referred to the differences between injuries primarily and directly received by a passenger and those received by him secondarily as the result of prior injuries to one of defendant's appliances. In the Kennon case the Railroad Company having been shown to have been first in fault in passing the plaintiff, who was a passenger, beyond her destination, and having been shown to have wrongly placed her in a position of danger,

insisted that she should establish, affirmatively, the precise cause of an injury which she received while so situated. We were of the opinion that the defendant could not impose this burden upon her. These decisions are not precedents for the judgment which has been pronounced in the present case, in which defendant was not shown to have at any time been at fault.

The extract from Fetter on Carriers, to which defendant refers, declares that, as a general rule, a street car company is not liable for injuries to passengers caused by starting its cars in the usual and ordinary manner, but any unusual manner of starting raises a question of negligence which is for the jury. The fact that the car gives a sudden movement when started is entirely consistent with the supposition that the horses were started in a careful and prudent manner, for a car loaded with passengers must necessarily require a strong pull of the horses to overcome the resisting inertia, and it must be something of constant occurrence and unavoidable. Neither is it evidence of negligence in a driver of a horse car that he whipped his horses when about to start a car full of passengers, unless there appears to have been something unusual in his manner of whipping.

In Black vs. The Third Street Railroad Company, the Supreme Court of New York, said: "A perusal of the testimony, as it appears in the printed case, shows an utter want of proof to establish the allegations of the complaint respecting the cause of the accident. There is not one word of testimony to show any unskilfulness or negligence of the company's servant in charge of the appliance by which the motion of the car was controlled; all that is said is that the car started with a violent jerk. No testimony whatever was given respecting the manner of starting a cable car, nor what is the character of the motion ordinarily produced by the attachment of a grip to the cable; nor anything respecting the character of the motion first imparted by the receiving cable to the car, at the instant the motion of the car begins. It was sought to establish that by reason of plaintiff's fall there must have been something unusual or excessive in applying the motive power, and hence negligence. There is nothing whatever to show what was the fault of any one of defendant's employees in operating the car. It cannot be said that there was any neglect on the part of the conductor in giving the signal to start. The person injured was with a party consisting of himself, his wife, two others, and several children. They all appear to have been seated except plaintiff when the car

started. In what attitude plaintiff was standing; how his body was balanced or whether he was not in such a position that any motion of the car in starting would have caused him to lose his balance does not appear. The whole of the plaintiff's case seems to depend on the mere characterization of the motion by himself and his wife and one witness as a violent shock, which, as above stated, is not in any wise distinguished from the ordinary usual force of the movement of a cable car when started. This case, therefore, is destitute of proof on the subject of negligence on the part of defendant's servants in starting the car, and especially of any proof of the particular act of negligence stated in the complaint as the cause of the accident."

The case cited resembles the one at bar quite closely in some of its features, but in the case before us the question as to whether defendant was in fault or not is not left in doubt.

We think that defendant has disproved the allegation that it was in fault.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that plaintiff's demand be rejected and his suit dismissed.