No. 13,463.

MORITZ GRETZNER VS. NEW ORLEANS AND CARROLLTON RAILROAD COMPANY.

SYLLABUS.

In this action, brought by plaintiff to recover damages for injuries received from a fall while disembarking, it appears that the car was brought to a stop when plaintiff stepped to the rear platform and from it sought to step down to the pavement by stepping with his two feet on the step and then attempting to descend to the pavement with his right foot, while the left was still resting on the step. It was then he fell. He ascribes the cause of his fall to a shock or sudden and unexpected movement forward of the car. The preponderance of the evidence proves that the car did not move at all at the time. There is want of sufficient evidence to establish the truth of the averment of the complainant.

The car and its appurtenances were in good order and nothing shows that the employes by whom it was manned were unskillful or negligent.

There was nothing extraordinary in the stop as made to discharge the plaintiff as a passenger, and no act was shown for which defendant can be held liable in damages.

APPEAL from the Civil District Court, Parish of Orleans—*Ellis, J.*

*William S. Parkerson* and *Bernard Bruenn* for Plaintiff, Appellee.

*Dart & Kernan* for Defendant, Appellant.

The opinion of the court was delivered by

BREAUX, J. The appeal presents for review the finding of a jury

and the judgment thereon, on testimony relating to plaintiff's fall to the ground and consequent injury, for which he was allowed as damages the sum of four thousand dollars with interest.

The pleadings set forth that the car of the defendant company in which plaintiff was riding as a passenger stopped on the lower side of the intersection of Julia street with Baronne street; that after it had stopped, plaintiff stepped to the back platform and to the step of the car and that as he was about to step down to the street pavement with his right foot, the car was put in motion and started ahead; that he was thereby violently thrown to the pavement and received severe and permanent injuries, the neck of the left femur being fractured and his left shoulder joint, chest and left arm being severely contused.

The defendant controverts the facts, to the extent, at least, that it is sought to prove its liability, and it also avers that the injury complained of was owing to plaintiff's negligence.

The questions involved are chiefly of fact and require for their decision a close analysis of the testimony of each witness.

Plaintiff, as a witness in his own behalf, informs us, in the course of his testimony, that he was in his sixty-ninth year at the date he testified, last January, and that his weight was about 165 pounds. Regarding the accident, he testified that when the car stopped, he having stepped to the rear platform, as before stated, moved from the platform to the step and from the step he attempted to descend by putting his right foot forward, at the same time holding on to the grab-handle of the car with his left hand. The car, at that time, jostled him and caused him to fall. He was rendered unconscious by the fall. The conductor came to his assistance and lifted him from the pavement and helped to carry him to his home, which was near the place of the accident. This witness stated that he did not get out of the car until it came to a full stop. We quote from the testimony of plaintiff:

"Q.—Are you positive the car stopped to let you get out?

"A.—I got up when the car stopped, from my seat.

"Q.—Are you equally positive that the car went forward and threw you off?

"A.—Yes, sir."

The young daughter of plaintiff who came out to meet him did not see her father fall, but saw him immediately after, supported by some one who was conducting him toward his home. In answer to her inquiry as to the accident, when she came to where her father was, she

said that the conductor said that he had been too hasty in ringing the bell to start. This is denied by the conductor, who testified that, on the contrary, he pointed to the car as still standing at the place where the accident happened.

The third witness for the plaintiff, a well esteemed and prominent physician, gave an account of the condition of plaintiff after the fall. He was still under the treatment of this physician at the date of the trial in the district court, which was a considerable time after the accident. It appears that though the hip-bone, which was fractured, has healed, none the less considerable pain is felt from it. He also feels pain in the left shoulder, which was contused, and suffers with paralysis on the left side of his body, owing, it is thought, to some injury of the brain caused by the blow received in the accident. The witness gives it as his opinion that it is not possible for one slipping on a smooth pavement and falling to hurt himself to the extent that plaintiff was injured; that he judges from the character of the wounds that the dashboard of the car platform struck plaintiff on the back, throwing him against the body of the car and that, after this last blow, threw him to the ground on his left side, breaking his hip and causing other injuries.

We take it that no one seriously attempts to controvert the fact that the car had come to a full stop when the plaintiff left his seat and walked to the rear platform to step therefrom to the pavement of the street.

Among the witnesses present only one, the plaintiff, testifies that the car moved as he was stepping out to the pavement. All the other witnesses who testify upon the subject say that the car had come to an absolute standstill at that moment and that no attempt was made to move it on at that time. No attempt had been made to start forward when the accident happened. This is the testimony of the motorman, which, of itself, under the circumstances, would not be entitled to weight, were it not that he is corroborated by other witnesses who are entirely disinterested.

Klein, the first witness for the defendant, did not feel the least "jerk" of the car, nor did he feel that any attempt was made to move the car immediately after it had stopped to allow plaintiff to descend.

Korel, another witness for the defendant, the book-keeper of a firm named by him, stated that the car made "a clean, smooth stop," and that no effort was made to go on before the plaintiff got out; that there was no movement of the car; that it was only after the accident that the

car moved on; that it was the unanimous opinion of all then on board of the car that it had not moved or jerked prior to plaintiff's fall.

We quote from the testimony of this witness:

"Q.—There has something been said about a bell having been given to signal to the motorman to go on after the car had come to a full stop; what do you say about that; on the lower crossing, after it came to a full stop?

"A.—No; positively no.

"Q.—The car didn't go after it came to this clean stop?

"A.—No; most positively."

The weight of the testimony shows, as we think, that there was no "jerking" or starting of the car on the night and at the time in question. The *res ipsa loquitus* is not of a character to render it reasonably certain that the force which brought on the fall came from some movement of the car, especially in the presence of the pronounced preponderance of evidence that the car did not move at the time. It does not absolutely follow as a fact that the asserted jerking of the car was the cause, when it may well be that other causes contributed to the accident.

The weight of this passenger, the plaintiff, was on the step of the car, as he was stepping out to the pavement. It had rained that day and the presumption is that the asphalt pavement at that place was slippery. A slip of the foot as it touched the pavement may have caused the fall against the car and afterwards to the pavement. In any event, the weight of the evidence does not trace the cause directly to the car. It is not for us to find as a fact that which witnesses, whose want of veracity we have no reason to suspect, testify is not as plaintiff alleges.

The car was in good order, there being nothing about it out of place or repair. The conductor was on the platform and it was at a full stop. Under these circumstances, a passenger who meets with an accident cannot, as we think, recover damages.

The movement of the car was in the usual manner. We have not found, after carefully considering the testimony, that there was any sudden movement such as alleged. There is a want of proof establishing the complaint urged. It does not appear that there was unskillfulness or negligence on the part of the motorman or conductor.

We do not think that we should give to the utterances of an employee the meaning which the daughter, naturally much concerned,

and, doubtless, in a state of excitement at the time, understood or inferred. The conductor denies the statement she accredits him with, and he, the conductor, asserted, as a witness, that he, on the contrary, when he was charged with having too hastily given the signal to start, said to the young lady that, not only had the car not moved, but it was still standing at the place where the accident occurred.

We quote, as illustrative, a case such as the one before us, from Black vs. Third St. Co., N. Y. Supreme Court, 1896, 37 N. Y. 831: "It was sought to establish that by reason of plaintiff's fall there must have been something unusual or excessive in applying the motive power, and, hence, negligence. There is nothing whatever to show what was the fault of any one of the defendant's employes in operating the car."

There being no proof establishing negligence, as we read the testimony, and as we view its preponderance, we are constrained to arrive at a different conclusion from that arrived at by nine of the jurors. Three of the jurors did not agree to the verdict.

One sometimes falls, break bones, and contuses parts of his body by slipping or stumbling under his own weight. It is evident, that in any case, plaintiff began to fall from the step of the car. It was possible to fall from that distance and receive very serious injuries, and that without having been thrown down by any shock or movement of the car. It sometimes happens that one falls owing to his inattention or lack of prudence, and yet he will sincerely persist in charging it to something other than the real cause. Be this as it may, the testimony utterly fails to trace the cause, with any degree of certainty, to the sudden and unexpected movement of the car, and, in consequence, it behooves us to set aside the judgment appealed from and reject plaintiff's demand.

It is ordered, adjudged, and decreed that the judgment appealed from is annulled, reversed, and avoided, and plaintiff's demand is rejected at his costs in both courts.

Rehearing refused.