(35 South. 614.)

No. 14,422.

SHARP v. NEW ORLEANS CITY R. CO.*

(June 22, 1903.)

CARRIERS—NEGLIGENCE—INJURY TO PASSENGERS.

1. It is not negligence for a street car to start while a passenger is in the act of passing from the platform into the car.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Walter Byers Sommerville, Judge.

Action by Frank Sharp against the New Orleans City Railroad Company. Judgment for defendant, and plaintiff appeals. Affirmed.

John F. C. Waldo, and Dinkelspiel & Hart, for appellant. Denègre, Blair & Denègre and Victor Leovy, for appellee.

PROVOSTY, J. Plaintiff, a man over 70 years old, and weighing 220 pounds, hailed a street car at the corner of Basin and Canal streets, in the city of New Orleans. He was accompanied by his wife. He carried. an umbrella. Whether he did not also have a paper bag of grapes in his hands is a disputed point in the case. The car was on Basin street, the river side, and was going towards Canal. The tracks go into Canal by a wide, easy curve, turning to the left, or towards the river. The car stopped just short of the crossing, or prolongation of the Canal street sidewalk across Basin street. Plaintiff was on the wrong side of the car for getting in, so that he and his wife had

---

*Rehearing denied January 18, 1904.·

to go around the car. In doing so they passed around the rear end of the car. The witnesses do not differ as to where plaintiff and his wife stood in hailing the car, but they disagree somewhat as to whether the car was short of the crossing, or stood on it, or had passed it, when plaintiff attempted to get on. We adopt the statement of the motorman, who says he stopped at the usual place—short of the crossing. Plaintiff's wife got on, and plaintiff followed or attempted to follow. At this point begins the serious divergence in the testimony, and arises the question upon which the case must turn.

Plaintiff says the car was started before he had gained a secure foothold on the platform, and while he had one foot on the platform and was in the act of lifting the other foot from the step, and that he lost his balance from the jerk of the car, and could not maintain his hold on the car as it rounded the curve, and so he fell.

Defendant says that plaintiff was already on the platform and in the act of stepping into the doorway.

Accordingly as the one or the other of these statements is accepted, the case must be decided. If the car was started before plaintiff had gained a secure footing on the platform, the defendant company was negligent and is responsible. Wardle v. Railroad Co., 35 La. Ann. 202; Howell v. Railroad, 22 La. Ann. 603; Lehman v. Railroad Co., 37 La. Ann. 705; Nash v. Railroad, 52 La. Ann. 1199, 27 South. 661; Kelly v. Railroad Co., 108 La. 423, 32 South. 388; Kennon v. Railroad, 51 La. Ann. 1599, 26 South. 466; Boikins v. Railroad, 48 La. Ann. 831, 19 South. 737. On the other hand, if plaintiff was on the platform and about to enter the doorway, the defendant is not responsible; for it is not charged in the petition, and it is not shown, that the movement of the car, either in starting or after getting under way, was negligent or out of the ordinary; and certainly it is not necessary to wait until the passenger has taken his seat, or even has entered the doorway, before starting a car. Such a rule would preclude the carrying of passengers on the platform, and would materially affect the expeditious operation of the cars; and to no purpose, since experience shows that the contrary practice is not usually attended with any danger. It has been

decided that street cars need not wait until passengers are seated before starting. Herbich v. North Jersey St. Ry. Co. (N. J. Sup.) 47 Atl. 427. If defendant exercised due care in the operation of the car, it is clearly not responsible for plaintiff's fall and injury. Cars cannot be started without some jerk, and cannot be run in a curve without developing a centrifugal force. The dangers from these causes are incident to traveling on the cars, and a traveler assumes the risk of them. Aiken v. Southern R. R. Co., 104 La. 163, 29 South. 1; Gretzner v. R. R. Co., 105 La. 270, 29 South. 496; Black v. R. R. Co. (Sup.) 37 N. Y. Supp. 831.

In his statement regarding the untimely starting of the car, plaintiff is corroborated by the witnesses Dennis and Levy; and the conductor, in his statement that plaintiff was already on the platform and was entering the doorway, is corroborated directly by plaintiff's witness Phelan, and inferentially by the two witnesses Oster, uncle and nephew.

The witness Dennis is a colored man, who at the time of the accident was a driver for the New Orleans Excavating Company, and at the time of the trial had lost his job. He was on his wagon, driving across Canal street towards the car. The car had come up Basin street into Canal, and he had come down Basin street into Canal, Canal and Basin being intersecting streets. While plaintiff was in the act of entering at the rear end of the car on the wood side, it is doubtful whether the body of the car was not interposed between him and the witness. The track is 2½ feet from the curb; the side of the car, therefore, was about 6 inches from the curb. Placing the wheel of the wagon equally close to the curb, the wagon and the car would be on a line fronting each other. Even placing the witness on the side of the wagon next to the curb (and the probability is that he was on the further side, since he was driving, and had a companion with him), and his opportunity for seeing, as he claims he did, was scant indeed.

The witness Levy was on the other side of Canal street, which is 100 feet wide. His attention was centered on his two little boys, who were playing in the street, when it was attracted to the plaintiff by some one hallooing, "Oh, my God!" He saw plaintiff hanging onto the car with one foot on the step, and saw him fall as the car was swinging around the curve.

Plaintiff's witness Phelan was at the corner near the car; that is to say, within a few feet. He says plaintiff was on the platform, in the act of entering the doorway. The two witnesses Oster, uncle and nephew, were driving a covered wagon across Canal street, and were passing the car when plaintiff fell right in front of their horse, 8 or 10 feet ahead. They saw plaintiff fall out of the car, but did not see him hanging to the side of the car, as he would have been if plaintiff and Dennis and Levy were correct in their statement of how plaintiff fell.

We have, then, plaintiff and Levy and Dennis testifying one way, and the conductor, Phelan, and the two Osters testifying the other way, with Dennis so located that his having been in a position to see is doubtful, and the witness Levy at some distance, and his attention attracted only after the accident had sufficiently progressed for the cries of distress to begin. In this condition of the case we have to agree with the judge a quo, by whom the case was tried, jury having been waived, that the proof preponderates on the side of defendant, or, at any rate, that plaintiff has not made his case sufficiently certain, although we must say that it is singular that plaintiff should have fallen—a man accustomed to riding on the cars and holding with one hand, as we find he was—and the car moving slowly. But we have to take the case as we find it.

The judgment is affirmed.