(43 South. 450.)

No. 16,010.

McGINN v. NEW ORLEANS RY. & LIGHT CO.

(March 4, 1907. Rehearing Denied April 15, 1907.)

1. APPEAL—REVIEW—EVIDENCE.

This suit is one against a railroad company for damages for personal injuries alleged to have been received by the plaintiff through the carelessness and negligence of its employés in the operation of the train. The facts and circumstances connected with the accident have been brought before the Supreme Court as far, presumedly, as each party could, in aid of its own side of the controversy. The court deals with it as a whole, regardless of and without reference to the party by whom the particular testimony was introduced. Ramos Lumber Co. v. Labarre, 40 South. 902, 116 La. 559; Aiken v. South. Pac., 29 South. 1, 104 La. 160.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 3262–3278.]

2. CARRIERS — INJURY TO PASSENGER — PRESUMPTION OF NEGLIGENCE.

The proposition contended for by plaintiff—that in an action of this character all that the plaintiff bringing it is required to prove is the accident, the fact that she was a passenger, and that she had not been safely placed on the ground at her destination, when the burden shifts to the defendant company to prove that the accident did not arise from any negligence on its part, or that of its agents or employés—is too broadly stated. The circumstances surrounding and connected with plaintiff's accident were of character such as to withdraw against the defendant any presumption of fault or negligence, and it should not be held responsible.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 1283–1294.]

3. SAME—BURDEN OF PROOF.

The rigor of the rule announced in article 2754 of the Civil Code touching the burden of proof of carriers is to some degree relaxed in the case of damage to passengers from what it is in reference to things in their care.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 1283–1294.]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by Elizabeth McGinn against the New Orleans Railway & Light Company. Judgment for plaintiff, and defendant appeals. Reversed, and action dismissed.

Dart & Kernan, for appellant. George Joseph Untereiner, for appellee.

Statement of the Case.

NICHOLLS, J. The plaintiff sought to recover herein the sum of $5,000 for damages for personal injuries alleged to have received by her from the gross carelessness, negligence, and want of care by the employés of the defendant company in the operation

and running of an electric car of the defendant company in the city of New Orleans.

The case was tried before a jury, which returned a verdict for $500 in favor of the plaintiff by a vote of 10 to 2 jurors.

A judgment was rendered accordingly.

Defendant pleaded the general issue.

Plaintiff set out as her cause of action:

That she was in good health and a passenger on a car of the defendant company on September 3, 1905. That when it reached Metairie Road and Canal street she signaled for a stop at the usual stopping place to discharge passengers. That it came to a full stop, and she arose from her seat to leave the car. That while petitioner, who is 70 years of age, was rising, and before she could get fully on her feet, the conductor in charge of the car gave the motorneer the signal to go ahead, thereupon the motorneer applied the power to the car, which went forward with great force, throwing petitioner down violently in the car, breaking her right leg in two places, one above the knee, the other below the knee, thereby causing petitioner damage by suffering great mental and physical pain in the sum of $4,750, forcing petitioner to employ physicians to treat her, and purchase drugs, bandages, etc., at an expense to her of about $250, all of which she is entitled to recover from defendant.

That the giving of the signal to start to the motorneer by the conductor in charge of the car through which petitioner was injured and damaged as above set forth constituted gross carelessness and negligence and want of care by the employé of defendant company in the operation and running of said car, for which defendant is responsible to petitioner.

Petitioner alleges ·amicable demand without avail.

The plaintiff died after judgment, and her heirs were made parties. They answered the appeal, praying that the judgment be increased to the amount prayed for in the petition.

The plaintiff, a woman 70 years of age, and her son, a man about 30, boarded as passengers a car of the defendant company at the corner of Tchoupitoulas and First streets; their destination being Greenwood Cemetery, on Canal street. Instead of proceeding by the most direct route, they took successively (by means of interchange tickets) four cars on connecting lines of the same company, having to remain on cars a very considerable time. The stopping point for Greenwood Cemetery for the last line of cars they were traveling upon was on Canal street, after passing around the curve connecting City Park avenue with the latter street. It is conceded by all parties that the usual stopping point was reached by the car after it had swung around the curve, and that it came to a dead stop on the upper track in Canal street. One or more passengers got out at that point, among them plaintiff's son. Several persons followed him. The son stood on the ground waiting for his mother to follow him, but, instead of doing so, she fell, or was thrown, into the aisle or passageway of the car, and by the fall her leg was severely broken.

The circumstances under which she received the injury, as shown by her testimony, were:

"That she was on the seat and saw the people going out. She waited until they went out. She had to hold on to the handle of the car. She was within three feet from where she was standing when she was thrown flat on her side. She supposed the car stopped when it came to the corner. She knew it stopped and the people got out. Some were in the car and some got out. She waited until the big rush went out. There was nobody who pushed her; nobody was behind her; only what was in front of her was getting out. She took hold of that handle, and as soon as she let go—she was not two steps from where she was when she was thrown right on her side flat—the car gave a kind of a jerk. She did not know whether the car started whilst she was walking, but it gave a kind of a jerk. It must be the car gave the jerk that threw her off her feet. She was just going out. She was not far from the door. She was walk-

ing at the time the jerk took place; just as soon as she got out of the car seat. She was sitting down, and she got up and had hold of the handle, so she did not go to the other side. She was following the crowd. She was only three steps from where she was when she was thrown on her side. The car stopped, headed for Canal street. She waited until the car went round the curve and stopped dead. Then some people got out. When she saw the crowd, she stood until they got out; until they passed her, and then she followed them. They were mostly off the platform when she started. Some were still going out. She had hold of the handle of the seat, and let go and then fell. As soon as she had a chance to get out, she started, and fell. She had gone three steps when she fell."

Being asked what caused her to fall, she answered:

"She thought it must be the car gave a kind of a shuffle. She felt a shuffle like something would come under her feet and raise her up and threw her right out. The car did not move forward or backward. It was like something rose under her and threw her up. She did not know what that thing was underneath her feet. She did not hear any noise. She fell right alongside of her own seat—like she got out of the seat. She held hold of the handle of the car, and she walked along and three steps from there she was taken off her feet and thrown."

The following questions were asked and answers given:

"Q. When you got up out of the seat, you made one step?
"A. Yes, sir.
"Q. Then you let go your hand?
"A. Yes, sir.
"Q. You took one step as you got up inside the seat?
"A. Yes, sir.
"Q. And one step outside of the seat?
"A. Yes, sir.
"Q. And one when you left hold of the handle?
"A. Yes, sir.
"Q. Then you fell?
"A. Yes, sir.
"Q. You are sure you had just let your hand go of the handle when you fell?
"A. Yes, sir; when I took the third step, I went out and took hold of the handle, and stood there until I had a chance to get out.
"Q. At the time you say you felt the shuffle, did the car move?
"A. I didn't feel it moving. Whether it moved or not, I don't know. I suppose it did when it threw me off my feet. Something threw me off and crippled me for life.
"Q. Were you thrown down before you got into Canal street, just before making the turn into Canal street, or after the car had made the turn?

"A. After it made the turn—the people didn't get out until the car turned and stopped."

James McGinn, the son of the plaintiff, testified that the car made the whole curve before it stopped. It then stopped. He got out on the sidewalk and waited for his mother to come out. While he was waiting the car made a sudden jolt. He saw it, but did not hear it. The car moved forward. There was a movement, just a sudden movement. The car was stopped at a standstill when he rose to get out of the car. Some people got out after him. The curve was a hard curve; the car swings as it comes around the curve; many a time he had got a jolt; his mother knew this too. The car had made a positive stop after that long curve, and he was standing on the ground, and then he heard the car jolt; did not see the conductor give the motorneer a signal to go ahead, nor did he hear one. The car moved about half an inch. The motorneer must have put his power on when the car moved. The car did not move back after it moved forward. It went forward and stayed. He did not hear a bell ring after it went forward. The car went with a sudden jolt.

Pfeifer testified that he was a passenger on the car. He was sitting in a seat in front of the plaintiff, but he looked back. The son got out and the old lady got up, and the car started and gave a jolt, and threw her down in the car. No signal to start had to his knowledge been given by the conductor. The old lady had proceeded 36 inches more or less, he thought, from her seat when the jolt occurred. There were two bells given after the old lady fell. He thought it was a signal to stop. The car stopped just about as soon as the bell rang after the old lady fell. After the signal to stop, the car moved, he thought, about 30 feet. The old lady got up from her seat, walked about three feet, and then the car moved ahead, not fast, but a pretty hard jerk.

The conductor of the car was Joseph Castellanas. He testified that the car came to a stop after it got to Canal street. After that nothing occurred to the car. It made no movement whatever to his knowledge. It came to a good stop. A good stop is one where the car does not go past the regular stopping place. The motorman did not bring the car to a stop suddenly. The car was at a dead stop when the lady got off (a lady who had got off at the stopping point). He gave no signal to the motorman to go ahead. He did not go ahead. He is positive of that. The car made no movement of any kind. It is not true after the stop the motorman started and went forward 20 to 50 feet, or that he gave him two or three bells to stop. He saw nothing done in or about the car to cause the old lady to fall. He did not know what caused her to fall. Up to the time the car resumed its trip it never moved. The old lady fell just in front of where she was sitting.

The motorman on the car, John Cazette, testified that the car came to a dead stop at the usual stopping place; that after the stop it made no motion. It neither went forward nor backward in any way. It did not shake or have any motion. It was not true that after it came to a dead stop he went forward with his car a distance of 20, 30, or 50 feet. He did not receive two or three bells from any one to stop the car going ahead like that. He never moved the car from the time it came to its first dead stop. It was not possible for his car to move half an inch under any way he had of feeding power into it. He did not, as a fact, feed any power to that car after he got the first bell. If the car moved half an inch, it would not be from any power he fed to that car. The only passenger in the car besides Pfeifer at the time was Joseph Mueller. He testified that the car came to a dead stop. That it made no movement, either forward or backward, after it came to a stop. He was positive of that.

## Opinion.

This case reaches the Supreme Court after each party had produced all the facts and circumstances which, presumably, it was within its power to bring forward in support of its own side of the controversy, and we deal with it as a whole regardless of, and without reference to, the party by whom particular testimony was adduced. The particular cause assigned by the plaintiff for the accident after the car had come to a full stop at her place of destination was that the conductor in charge of the car gave the motorman the signal to go ahead, upon which signal the latter applied the power to the car, which went forward with great force, throwing her down violently and breaking her leg. This has been disproved. We are satisfied that the car did come to a full stop as she alleges it did, but we are also satisfied that the conductor gave no signal to the motorman to go ahead, and that the latter did not, in fact, do so. We fail to find any fact disclosed by the evidence which would warrant or justify us even in inferring that either of those employés had been guilty of negligence or failure of duty in any particular. The plaintiff does not pretend that the appliances of the car were not such as they should have been, nor does she intimate that the track was out of order. Were we to sustain the verdict of the jury and the judgment of the court, we would have to ascribe fault to the defendant arbitrarily, without any proof and even really without any suggestion.

The plaintiff insists that all that was necessary for her to do under the law was to prove that she was a passenger on the car, to prove the accident, and that she had not been safely placed on the ground at her destination; that the burden then shifted upon defendant to prove that the accident did not arise from any negligence on the part of the defendant company, its agents, and employés by their neglect or failure to provide safe appliances with

which to execute their contracts. In that connection is cited Nellis on Street Accident Law (published in 1904) pp. 590, 591, and also Cannanty v. Mexican Gulf R. R., 5 La. Ann. 703, to Le ·Blanc v. Sweet, 107 La. 369, ·31 South. 766; Peniston v. C. St. L. & N. O. R. R. Co., 34 La. Ann. 777, 44 Am. Rep. 444; Moses v. Railroad Co., 39 La. Ann. 649, 2 South. 567, 4 Am. St. Rep. 231; Julien v. Wade Hampton, 27 La. Ann. 377; Spurlock & Wife v. Shreveport Traction Co., ante, p. 1, 42 South. 575.

Plaintiff's suit is not ex contractu, for damages arising from the violation of a contract, but one ex delicto, for damages for personal injuries based upon an allegation of negligence, and where the act complained of is such as characterizes it as a tort or quasi offense. Plaintiff maintains that even though the action may be in tort, based upon "negligence," it is an action arising out of the violation of a contract between a carrier and its passengers, whose rights and obligations are specially provided for and regulated by article 2754 of the Civil Code, which throws the burden of proof on the carrier.

We have had occasion several times to refer to that article of the Code noting that the article refers to "things" intrusted to the care of the carrier, and not to "persons." Patton v. Pickles, 50 La. Ann. 857, 24 South. 290; Kennon v. Vicksburg, Shreveport & Pacific R. R. Co., 51 La. Ann. 1604, 26 South. 466; Aiken v. South. Pacific, 104 La. 160, 29 South. 1.

There is reason for a difference between cases involving injury to "things" and those respecting injuries to "persons." In the one the objects injured are inanimate, and can have nothing whatever to do with the injury they receive. Nothing intervenes to break the responsibility of the carrier for their safety. In the other the volition of the persons transported, their infirmities, mental and bodily, as well as other matters, personal to themselves, may affect the situation—matters of which the carrier could rarely have knowledge and over which it has no power of control. Aiken v. Southern Pac. R. R., 104 La. 160, 29 South. 1. These facts modify, as between carriers and their passengers, the rigidity of the rule as to the burden of proof in cases of this character.

Fetter, in his work on Carriers of Passengers (480 et seq.), after referring to the general rule as to the burden of proof in damage cases for personal injuries instituted by passengers against railroad companies as being thrown upon the latter, says there are three distinct reasons assigned for this exception in favor of passengers. The first is the existence of a contract relation between the parties with the resulting duty of the carrier to exercise the highest degree of practicable care and skill to transport the passenger safely. The rule requiring the highest degree of care, etc., would be of little practical value if it were not enforced in judicial administration by a correllative rule of evidence. That rule is that when an injury has been shown to be occasioned by a defect in the instrumentalities of transportation, or by an error of the carrier, or his servants, in operating them, a presumption of negligence arises against the carrier sufficient to take the case to the jury. The second reason assigned is that there must be reasonable evidence of negligence. But where the thing is shown to be under the management of the defendant or his servants, and the accident be such as in the ordinary course of things does not happen, if those who have the management of use the proper care, it affords reasonable evidence in the absence of the explanation by defendant that the accident arose from want of care.

The third reason assigned is that from the very nature of things the means of proving the specific facts are more in the power of the carrier. The latter, owning the prop-

erty and controlling the agencies, is presumed to have peculiarly within his own knowledge the cause of an accident which he might be interested to withhold, and which the passenger could not know and might be himself unable to prove.

The author remarks that in some of the earlier cases on the subject it was held that the mere happening of an accident raises a prima facie presumption of neglect, and throws on the carrier the onus of showing that it did not exist, but this view is now universally abandoned.

In Chicago City R. R. Co. v. Rood, 45 N. E. 238, 163 Ill. 477, 54 Am. St. Rep. 478, it was held that:

"A presumption of negligence does not follow the simple and unexplained fact of an injury to a passenger while riding on a train, but the cause, or, at least, the nature of the accident resulting in the injury must be shown, for it is upon the character or nature of the accident that a presumption of negligence must rest."

Where all the circumstances surrounding and connected with an accident are before the court, and they are of character such as withdraw a presumption of negligence against the railroad company (as they do in this case) it should not be held responsible. Ramos Lumber Co. v. Labarre, 40 South. 902, 116 La. 559; Aiken v. South. Pac. R. R., 104 La. 160, 29 South. 1.

Appellant's counsel say in this connection appellee's claim is too broadly stated. In all passenger cases it is held that plaintiff must show some act or omission, some occurrence in or about the car unusual and not ordinarily to be expected in the course of transportation, before the burden is shifted to defendant to explain the injury. They cite Stockes v. Saltonstall, 13 Pet. 181, 10 L. Ed. 115; Cincinnati R. R. Co. v. South Folk Co., 139 Fed. 532, 71 C. C. A. 316, 1 L. R. A. (N. S.) 533; Lincoln Traction Co. v. Webb (Neb.) 102 N. W. 258; Aiken v. South. Pac., 104 La. 163, 29 South. 1; Gretz-

ner Case, 105 La. 266, 29 South. 496; Philips Case, 106 La. 592, 31 South. 135; Sharp Case, 111 La. 395, 35 South. 614, 100 Am. St. Rep. 488; Black v. Railroad, 37 N. Y. Supp. 831, 2 App. Div. 387.

In the case before us the injury may well have happened by plaintiff's being mistaken as to the precise time and circumstances under which she was injured. That she may have risen before the car had come to a dead stop. In her pleadings she alleges that "she is 70 years of age, and before she fully got on her feet the car moved forward." We think quite likely that, instead of moving forward, the car, after she arose, finally came to a dead stop, and that, having had her limbs made stiff by being so long seated, the slightest thing was apt to cause her to fall.

In Aiken v. South. Pac. R. R. this court said:

"It is not difficult to understand how a passenger just rising from his feet, * * * or one who having just arisen should be moving forward, * * * might be thrown from his balance by even a very slight blow, and that from a special state of facts personal to himself with which the parties in control of the boat have no relation and no knowledge he should receive injury."

It is true that the plaintiff's son says he did not leave his own seat until the car had come to a dead stop, but he and the conductor are not in accord on that point. What the actual cause of the accident was we do not know. The actual cause set up has been negatived by the testimony. Were the facts such as plaintiff's counsel claim them to have been, the jury should have accorded plaintiff a larger amount that it did. The verdict was evidently a sympathetic one. Juries cannot be sustained in indulging in sympathy on insufficient evidence at the expense of other persons. We are of the opinion that the verdict of the jury and the judgment of the court therein were not well grounded. They are therefore hereby set aside, annulled,

avoided, and reversed, and plaintiff's demand rejected and dismissed, with costs in both courts.