LAND, J.
This is a suit for damages for personal injuries alleged to have been sustained by reason of the negligence of one of defendants’ motormen in bringing his car to *655 a violent and abrupt stop, and then suddenly starting it, while’the plaintiff was in the act of arising from her seat for the purpose of leaving the car at the next street crossing.
Plaintiff alleged that she was thrown forward and thén backward, causing her to fall upon her knee, and the ligaments thereof to be severely strained and lacerated.
■ Defendant for answer pleaded the general issue, specially denied negligence on the part of the defendant, its servants, agents, or employés, and averred that:
“If plaintiff fell and hurt herself as alleged, said accident was due to her own carelessness, or to her awkwardness in tripping over some part of her wearing apparel, or because of her physical inability to preserve her equilibrium while walking in a slowly moving car.”
The jury, by a vote of 9 to 3, found a verdict in favor of the plaintiff for $500. The judge refused a new trial, and the defendant appealed. Plaintiff and appellee in her answer to the appeal has prayed that the ver■dict and judgment be amended by increasing the amount of damages awarded.
On April 25,1911, Mrs. Vincent took a Canal Belt car, which was proceeding in the direction of her residence at the corner of Canal and Rendon streets.
Mrs. Vincent, as a witness, gave her version of the accident as follows, to wit:
“Well, I rang the bell as usual to get out of the car at my corner. There was a very large woman sitting right on the other side of me. You see, I was seated by the window, and she was right next to me in the seat, and I got up so as to pass her by, and she got up herself, and I started out, and just as I turned round to put my hand on the other side of the car, on the other handle I mean, the car gave a sudden jolt, and I turned round and went down and fell. I didn’t feel any more until I was suffering agonizing pains.”
Mrs. Vincent further testified that she fell in the direction of the rear platform, her head towards the conductor, that her hat and satchel were “knocked away,” and that when she “came to” some gentleman was assisting her. Mrs. Vincent, when asked what caused her to fall down/ replied:
“Well, it was the sudden jolt the car gave. I guess I must have lost my balance and fallen over, because I was perfectly all right at the time I rang the bell, and then the car gave that awful jolt, and all I know about, it is, as I was turning round this way (indicating), I was thrown around flat on the floor. I was laying straight out in the aisle of the car, and I know I screamed very much, because I was suffering a great deal of pain at the time.”
The witness after reiterating the cause of her fall was the “awful jolt” of the car, further answered as follows:
“Q. Have you ridden in street cars previous to that time?
“A. Yes, sir.
“Q. Did you occasionally ride in the street ears in this city?
“A. Yes, sir.
“Q. Have you ever experienced such a jolt as that previous to that time?
“A. Yes, sir; very often.
“Q. Were they that hard?
“A. Well, I don’t know if they were that hard.
“Q. On what line did you experience this.
“A.’ The Canal Belt car. It went right by my house that line. I was living at the corner at that time.”
In answer to a cross-question, the same witness said:
“I was thrown right in the aisle, because of the way the car stopped.”
Bliss Cofinne Ingraham, a passenger in the car, testified in part as follows:
“Well, the car was crossing the street, and it wanted to stop — well, I don’t know what you would call it — on the opposite- side of the street. The conductor rang the bell, and the car gave a— he gave the motorman a jerk to stop, and the car went to the other side to let the lady off. As the car gave the jerk — well, I didn’t see her until the time that she fell down, but I guess she must have been— (Here the witness was interrupted by counsel with the request not to guess.)
“Well, I know when I turned around to see, the lady was laying with, her head toward the conductor in the middle of the car, the aisle.”
Continuing, the witness testified, in substance, that there was an “awful jolt of the car,” and simultaneously she heard Mrs. Vin *657 cent scream, and that the jolt was hard enough to knock one down. On cross-examination the witness said that the car stopped suddenly with a jolt, and remained there quite a while.
Mr. Regan, a witness for the plaintiff, testified that he was on the car at the time of the accident in question, and that the car came to an abrupt stop, and one of the passengers, a lady, screamed, and she was assisted out. Mr. Regan further said that he was reading a newspaper at the time, and that the jar was sufficient to throw the paper out of his line of vision, meaning that he had to get his “place back again.” On cross-examination, the witness said the “car did jar, did come to a very abrupt stop with a jar,” and that if he had been sitting on a front seat, where he was not braced, he felt sure that he would have felt the jar more than he did.
Mr. Oalkins, a defense witness, said that he was standing on the front platform of the car at the time of the accident, and felt no jar or jolt, and that he and another gentleman assisted Mrs. Vincent from the car, and walked with her to the middle of the street, and then asked Mrs. Vincent whether she needed anybody to assist her home, and that she replied that she was all right and could get home unassisted. It was admitted that, if Mr. Pepitone were present, he would substantially corroborate the testimony of Cal-kins, with the exception that he (Pepitone) was seated in the body of the car.
Mr. Moffet, another witness for the defense, was seated in the car at the time of the accident, and did not feel any sudden or unusual jolt of the car. This witness saw Mrs. Vincent step out into the aisle and fall down in a sitting position with her face toward the front of the car, and heard her cry out: “Oh my leg! Oh my knee!” or something like that.
Mr. Lesaichere, for the defense, testified that he was the conductor of the car at the-time of the accident, and was standing on the rear platform; that the car was coming to a slow stop, when he saw Mrs. Vincent, sink down to the floor of the car, in the aisle,, and, as she did so, he ran up to her and offered his assistance; and that he and another gentleman, a passenger, helped her off the car and across the street, and offered to go with her, but she said she did not need further assistance from them. The conductor testified positively that the car came to a slow easy stop, as was usual, and that there was no jolt or jar sufficient to disturb him or any one else on the car.
Mr. Tileten, the motorman of the car at the time of the accident, testified that he had served the defendant in that capacity “nearly ever since the time that they first ran street cars, electric cars,”' and that he was an engineer on the dummy line before they changed the system. This motorman deposed that he heard a lady screaming just as he was bringing the car to a stand at the usual and regular stopping place; that he brought the car to a stand “very gently,” made “a nice soft stop”; that “there was nothing at all out of the ordinary about it.” The witness further stated as follows:
“I went into the car after the lady screamed, hearing her scream and going into the car, and I asked her what threw her down. She answered that she didn’t know what it was;” and that he asked the lady to give him her name, but she would not give it.
There is nothing to show that the large lady who was standing in the aisle when Mrs. Vincent fell was disturbed by the alleged sudden and violent jolt of the car.
The testimony of the plaintiff and her lady friend that there was an “awful jolt” is not corroborated by the testimony of Regan, as to the jar he experienced, at the same time, as* shown by the following extracts from his testimony on cross-examination:
“Q. You have no recollection of any inconvenience being caused to you personally, throw *659 ing you backward or forward, or anything of that kind, by this stopping of the car?
“A. No, sir; not to my recollection.
“Q. You say that at the time you were reading a newspaper?
“A. Yes, sir.
“Q. And you also said, or I understand you testified, that the jar caused you to lose your place where you were reading?
“A. Yes, sir.
“Q. That is to say, you lost the line where you were reading?
“A. Yes, sir.
“Q. It wouldn’t take very much of a jostle to do that, would it?'
“A. Well, possibly not.
“Q. Just a little jostle of the arm would do that ?
“A. Yes, sir.”
Further along, the same witness said:
“Well, the car did jar, did come to a very abrupt stop with a jar; there is no doubt about that; and, if I had been sitting in the front seat of the car where I wasn’t braced, I feel sure that I would have felt it more than I did.
“Q. You were not expecting anything, were you?
“A. No, sir; never on a street car. I expect to be taken back and forth without jarring, but you generally get it anyhow.”
As above stated, three other passengers on the same ear testified that they felt no jar when the car stopped on the occasion in question. The conductor and motorman testified positively that there was no unusual jolt or jar at the time of the accident.
Plaintiff’s suit was instituted on the theory that her fall was occasioned by a violent abrupt stop of the car, followed immediately by its sudden start forward. On the trial, not a title of evidence was adduced to prove the alleged sudden start; and the plaintiff failed to prove with reasonable certainty that an unusual stop was made.
In Philips v. St. Charles R. Co., 106 La. 592, 31 South. 135, the complaint of the passenger, who was standing on the step ready to get off, was that the car gave a sudden jerk and flung him off. The court said:
“But slight irregularity of movement are common incidents in the starting or stopping of street cars, and those who prepare to alight, and who do alight whilst the cars are in motion, assume the risk resulting from such irregularities.”
In Sharp v. New Orleans City R. Co., 111 La. 395, 35 South. 614, 100 Am. St. Rep. 488, the court said:
“It has been decided that street cars need not wait until passengers are seated before starting. Herbich v. North Jersey St. Ry. Co. [65 N. J. Law, 381] 47 Atl. 427. If defendant exercised due care in the operation of the car, it is clearly not responsible for plaintiff’s fall and injury. Cars cannot be started without some jerk, and cannot be run in a curve without developing a centrifugal force. The dangers from these causes are incident to traveling on the cars, and a traveler assumes the risk of them.”
In the case of McGinn v. N. O. Ry. & L. Co., 118 La. 811, 43 South. 450, 13 L. R. A. (N. S.) 601, an old lady- while leaving the car fell in the aisle, breaking her right leg in two places. Plaintiff alleged, as in this case, that the car stopped and suddenly started again, throwing her violently to the floor of the car. The court, after reviewing the evidence, said:
“We think, quite likely, that, instead of moving forward, the car, after she arose, finally came to a dead stop.”
The court held that “the verdict was evidently a sympathetic one,” and should be reversed and the suit dismissed.
We find that the defendant was not negligent in the operation of the car on the occasion in question. ' The plaintiff assumed the risk of ordinary jars or jolts incident to the stopping of the car in its usual manner.
It is therefore ordered that the verdict and judgment below be set aside and reversed, and it is now ordered that plaintiff’s suit be dismissed, with costs.
PROVOSTY, J., being absent on account of illness, took no part.