(92 South. 730)

No. 24778.

### VEITH v. NEW ORLEANS RY. & LIGHT CO.

(May 29, 1922. Rehearing Denied by Division C June 30, 1922.)

*(Syllabus by Editorial Staff.)*

Carriers ⬢⟩318(4)—Evidence held not to sustain verdict for injuries from starting car with extraordinary jerk.

In a passenger's action for injuries claimed to have been caused by the starting of a street car with a sudden or extraordinary jerk, the evidence as a whole *held* not to sustain a verdict for plaintiff.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Action by Mrs. Philip Veith against the New Orleans Railway & Light Company. From a judgment for plaintiff, defendant ap-

peals. Judgment annulled, and plaintiff's demand rejected.

Dart, Kernan & Dart, of New Orleans, for appellant.

Johnston Armstrong and Wm. Winans Wall, both of New Orleans, for appellee.

Before Division B, composed of Justices O'NIELL, LAND, and BAKER.

BAKER, J. Defendant has appealed from a verdict and judgment allowing plaintiff $2,-587 damages for personal injuries. Having entered one of defendant's street cars as a passenger, she fell to the floor when the car started, striking her left arm on the end or arm of a seat and fracturing a bone of the forearm. She avers that the car was started with a sudden or extraordinary jerk. Whether the car was started with an extraordinary jerk is the only question at issue in the case.

Plaintiff was 69 years old at the time of the accident. She entered a car from the rear door, and was walking to one of the seats reserved for white passengers when the car started. She fell between the last pair of cross-seats; that is, about three feet from the rear door. It was on the end or arm of one of these seats that she struck and broke her arm. She testified that the starting of the car gave "a sudden, terrible jolt," and threw her to the floor. Only one other witness, another passenger, testified that the starting of the car was unusually sudden. His testimony, however, does not convey the impression that the jolt was very severe. He said: "The car started with a sort of a sudden jolt." He said he had his arm resting on the sill of a window of the car, and was holding some documents or stubs in his hand, "and when the car started it did give a jar, because one of my stubs slipped out of the bundle through this jar; I had my fingers barely closed on it."

Three witnesses testified that the car did

not start suddenly, or with an extraordinary jerk. Two of them were passengers on the car. The other was the motorman. He explained that the controller was equipped with a contrivance that prevented a very sudden starting of the car, by preventing the current being turned on too fast. His testimony was not contradicted. Strange to say, he did not know of the accident until he had arrived at the end of his return trip. The only reason that we can imagine for the conductor's failure to inform the motorman of the accident is that the conductor did not realize how seriously plaintiff was hurt. That is quite probable, because, after riding several blocks, she left the car and returned home, and her family physician was not sure that there was a bone fracture until an X-ray examination was made. Of the two passengers who testified on behalf of defendant, one was a colored minister of the gospel. He occupied the seat against which plaintiff fell. He testified that the starting of the car was not unusually sudden or accompanied by any extraordinary jerk. The other passenger who testified on behalf of defendant was an employee of the sewerage and water board. He testified that he was seated near the front end of the car, checking a report, and writing, and that he was not disturbed by the starting of the car. The conductor, having left the state, did not testify in the case.

Though we have no doubt whatever of the veracity or sincerity of the plaintiff in her expression of opinion that the car was started with an unusually violent jerk, our conclusion is that the evidence in the case, as a whole, does not sustain the verdict.

The verdict and judgment are annulled, and plaintiff's demand is rejected, at her cost.

Rehearing refused by Division C, composed of Justices DAWKINS, ST. PAUL, and THOMPSON.