NEE v. N. O. PUBLIC SERVICE, INC.

---

(April 29, 1929. Opinion and Decree.)
(May 27, 1929. Rehearing Refused.)

---

J. C. Henriques and Frank T. Doyle, of New Orleans, attorneys for plaintiff, appellee.

Ivy G. Kittredge, of New Orleans, attorney for defendant, appellant.

· JANVIER, J. On a rainy morning in May, 1922, Mrs. Dwyer, who will be hereafter referred to as plaintiff, accompanied by her young son, at the corner of Third and Freret Streets, boarded a car bound uptown, operated by employees of the Receiver of New Orleans Railway and Light Company.

Plaintiff paid the fares for herself and her son and, after receiving her change and the transfers which she had asked for, entered the body of the car in order to obtain a seat.

As she reached a point a few feet within the body of the car, she fell backwards and, in falling, broke her right arm in two places and sustained severe bruises to her back and a general nervous shock.

Defendant corporation was organized for the purpose of buying and taking over the properties formerly owned by New Orleans Railway & Light Company, and operated at the time of the accident by the Receiver appointed by the United States District Court.

Defendant corporation at receivership sale bought and took over the properties which had been operated by the Receiver. At the sale one of the conditions imposed by the court was the assumption by the purchaser of such responsibility for accidents as was by law imposed upon the Receiver.

In the petition it was alleged that petitioner's fall was occasioned by the fact that while she was seeking a seat the car suddenly decreased its speed, which threw her off her balance, and then as suddenly increased it, with the result that she was thrown backwards. She alleges that as she was falling backwards she attempted to regain her balance, but that one of the trap doors in the floor of the car was raised above its normal position and that she tripped over this and was thrown violently backwards to the floor. Quite peculiarly, in her testimony she denies that the car gave a lurch forward· and stoutly maintains that it was the slowing down of the car which caused her to lose her balance.

As plaintiff was a passenger, and since there is no gainsaying the fact that she received injuries, the burden, under the jurisprudence of this State, is placed upon defendant to show that the injuries were not the result of its negligence. It must explain how the accident happened and must show that the cause thereof cannot be attributed to its fault.

Haynes vs. L. R. & N. Co., 140 La. 1019, 74 So. 538.

Hopkins vs. N. O. Ry. & L. Co., 150 La. 61, 90 So. 512.

On the other hand, a carrier is not made liable to a passenger merely by reason of the happening of an accident, and if it can show that the cause of the accident was something beyond its control, or was the negligence of the passenger injured, no liability results. It is not an insurer of the safety of passengers.

Massicot vs. N. O. Ry. & L. Co., 141 La. 622, 75 So. 490.

Aiken vs. Sou. Pac. Co., 104 La. 157, 29 So. 1.

Gilliam vs. T. & P. R. R. Co., 114 La. 272, 38 So. 166.

Defendant's contention is that as plaintiff entered the body of the car with her

parasol in her left hand, the car was just starting to move forward and that the parasol caught either in a crack or hole in the floor or hooked on one of the seats, with the result that the forward movement of plaintiff was arrested and that this, added to the fact that the forward movement of the car would have had a tendency to throw plaintiff backwards anyway, caused her to lose her balance and to fall to her back.

We are much impressed at the outset with the vehement denial of plaintiff that it was the sudden starting forward of the car that threw her off her balance. She insists that it was the slowing down which was responsible. It cannot be denied that, when a vehicle is in motion and it is suddenly stopped or slowed down, all persons in it are, by the momentum which they have acquired, thrown forward, not backward. Therefore, if plaintiff was thrown off her balance by the sudden stopping or slowing up, of the car, she would have been thrown on her face and not on her back. If, on the other hand, her forward movement as she walked up the aisle was first arrested by her parasol catching on some part of the car, it is quite easy to understand how she was thrown off her balance in a backward direction, particularly when it is borne in mind that the car just at that moment was undoubtedly gaining momentum.

It is true that plaintiff denied on the witness stand that her parasol had caught on any part of the car. However, her statement made as a witness is so directly at variance with many statements made by her just after the happening of the accident, when there had not yet come into her mind the idea of a damage suit, that we find it difficult to believe that her statement made on the stand was not prompted by the desire to further the interests of her suit.

We find it conclusively shown that immediately after the happening of the accident she stated to at least five persons that her fall was the result of her catching her umbrella on the floor of the car. In addition to those to whom she made the statement, we find two others who saw her umbrella hook on some portion of the car. Plaintiff's counsel argues that the many statements she made, to the effect that her parasol caught in the floor of the car, should be disregarded, because at the time she made these statements she was suffering great pain and was not responsible for what she said.

It is true that when one is out of one's head as a result of pain, and in such condition makes irrational or foolish remarks, these remarks mean nothing, but here the statements made were in all respects rational and all the other facts mentioned in the statements were shown to be reasonable, logical and truthful. Why, then, should we disregard her statement in this one particular merely because it does not happen to coincide with the necessities of her lawsuit.

That it was her parasol that was the cause of the fall was told by her to Parr, to Renaud, to Dr. Thibaut, to Bourgeois and to Sheppard. That she also told her husband the same thing seems quite certain. Mr. Dwyer's denial at first that she told him anything about how the accident happened, and his reluctant admission later that she did tell him, indicates to our mind that he was not testifying with absolute frankness.

It is argued that Gremillon, the conductor of the car, contradicts the statements made by plaintiff that she caught her parasol in the floor, because he stated

that he saw her catch her parasol on the seat of the car. As a matter of fact, Mrs. Dwyer probably did not know just where her parasol had caught, but was certain that it had hooked or caught on something and therefore her statements and the statement of Gremillon differ only in such inconsequential details as to prove that the statements of both were made in good faith, and represent what each believed to be the truth.

Even Madison, one of plaintiff's witnesses, says that he saw the parasol catch in the door of the car as plaintiff was entering the body of the car, but he claims that she released it, and that the fall did not take place until some time later. We think it quite significant that he did notice the parasol catch on some part of the car, and it seems quite improbable that, if so long a time as he would have us believe elapsed between the catching of the parasol and the fall of plaintiff, he would have remembered it so well.

As to the alleged unevenness of the floor of the car, we find that all of the positive evidence, except the testimony of Madison and that of Bergeron, contradicts plaintiff's statement that there was such unevenness. The car had been in operation for a long time that morning. It had carried heavy loads of passengers and if the trap door had been raised above the rest of the floor three-quarters of an inch, it is practically certain that many of these passengers would have tripped over it. Furthermore, an examination of the floor made by several people immediately after the accident did not show any defect or unevenness. Most significant of all we find the testimony of plaintiff's two witnesses, Madison and Bergeron, to the effect that the elevation was at the rear end of the trap door and not at the front end. If this elevation were in fact at the rear end it could not have caused or in any way contributed to plaintiff's fall, because she could only have stumbled over it while moving forward, not while moving backward.

The evidence as to the sudden stopping or starting of the car is not convincing and shows that there was nothing unusual about its operation at that time. Cars must be stopped and must be started, and if these operations are conducted without unusual jolt or jar, no liability results merely by reason of the fact that some person is thrown off balance.

Sharp vs. N. O. City Rd. Co., 111 La. 395, 35 So. 614.
Veith vs. N. O. Ry. & L. Co., 152 La. 47, 92 So. 730.
Philip vs. St. Charles St. R. R. Co., 106 La. 592, 31 So. 135.
Vincent vs. N. O. Ry. & L. Co., 134 La. 634, 64 So. 654.

An examination of the floor showed no unusual hole or defect, or crack, and it is a well-known fact that vehicles such as street cars, railroad cars, steamboats, etc., must necessarily be so constructed that there are small cracks and holes here and there, but if those cracks and holes are only such as are usually found in such vehicles, accidents, though to some extent traceable thereto, are not chargeable to the negligence of the operators or owners.

Perkins vs. Bay State Ry. Co., 223 Mass. 235, 111 N. E. 717.

A careful review of the evidence convinces us that the cause of the happening of this accident was the carelessness of plaintiff in catching her parasol upon some part of the car and in attempting to walk up the aisle of the car without bracing herself by holding on, as is usually done, particularly by women passengers.

The verdict of the jury was in favor of Mrs. Dwyer for $3,750 and in favor of Mr. Dwyer for $517.50, which, apparently, was the amount expended by him for doctor's bills, etc.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed, and it is now ordered that there be judgment in favor of defendant and against plaintiff, dismissing plaintiffs' suit at their cost.