## MURPHY v. NEW ORLEANS PUBLIC SERVICE, Inc.

### No. 16184.

Court of Appeal of Louisiana. Orleans.

Oct. 19, 1936.

Ivy G. Kittredge, of New Orleans, for appellant.

Edward Rightor, of New Orleans, for appellee.

WESTERFIELD, Judge.

This is an appeal from a judgment of the civil district court awarding James· B. Murphy the sum of $5,505.86, as damages for physical injuries alleged to have been caused by the negligent operation of a motor bus belonging to the defendant, New Orleans Public Service, Inc.

The accident is described by plaintiff's counsel in his brief as follows:

"On the morning of November 5, 1932, the plaintiff, a middle aged gentleman of this City, who resides in that neighborhood, took a bus on the corner of Chestnut and Broadway, going towards St. Charles Avenue. The bus had pulled up flush with the curbing on the downtown river corner. On the downtown lake corner there was an automobile parked. Plaintiff entered the front side door, paid his fare, started to the rear of the bus, the bus was started and the driver swerved it sharply over to the left to run it over to the neutral ground curbing. The starting of the bus disturbed plaintiff's equilibrium and an unnecessary, sudden jerk to the left in combination with the starting, threw plaintiff to the floor. He struck the right side of his head, was semi-conscious for a while and suffered a paralysis of the left leg, which a year and a half afterwards did not permit him to walk except with artificial assistance."

There were but two witnesses whose testimony gives any light on the manner in which the accident occurred, the plaintiff and the driver of defendant's bus.

Plaintiff testified that his fall was due to the "jerking" of the bus after it had started and had moved 10 or 15 feet from the point where he boarded it. He says that:

"After paying my fare, I turned to my right to go and take a seat, and when I turned, it seemed almost instantaneous with my turning, the bus did what we call, in automobile language, it picked up suddenly like they very often do, but not always."

Aurelian Brown, the operator of the bus, testified that he stopped his vehicle on the riverside corner of Broadway and Chestnut, and that Murphy boarded the bus from its front end, paid his fare, and walked towards the center of the bus; that as he started the bus again he heard a noise behind him, looked back, and saw Murphy lying on the floor of the bus, whereupon he stopped and went to his assistance; that he had traveled about 50 or 75 feet in a diagonal direction from the sidewalk curbing towards the center of the street, and had not

yet straightened out into the line of traffic on Broadway, when he heard the noise and noticed that Murphy had fallen; that the start was gradual and smooth, the bus being equipped with an automatic accelerator, controlled by a foot pedal which is so adjusted as to secure such a start. He produced an "operator's card," which was introduced in evidence, which indicated that the bus had been inspected on the date of the accident due to the fact that he (Brown) had reported the brakes to be out of proper condition.

Three engineers, Baines and Rainville for defendant, and Lehde for plaintiff, testified as experts on the subject of motorbusses and their operation. Messrs. Baines and Rainville were engineers employed by the defendant, having charge of all busses and street cars owned by it. They testified that this bus was one of standard make, equipped with an automatic starting device designed to secure its gradual acceleration, and that it was in good condition at the time of the accident. Mr. Lehde, plaintiff's expert, declared that theoretically the bus should be smoother in its operation than a street car, but that whether it actually was or not was dependent upon the adjustment of the automatic starting device and the service and maintenance of the bus and equipment by defendant.

"If the equipment is in good condition, I would say it should start smoothly, yes. It is intended so by the engineers who built it." Lehde, Transcript, p. 31.

Subsequent to the accident which caused plaintiff's injury, certain stanchions or upright supports, extending from the floor to the top, were placed in the rear of the bus. These uprights can be used by passengers as support when walking in the aisle of the moving bus to take their seats. Baines declared that these stanchions were put there in order to give additional support to the roof of the bus, which was found to be to heavy and not, as contended by counsel for plaintiff, to insure necessary, and previously neglected safety appurtenances for the use of passengers. The bus, it is claimed, was of standard construction and contained all essential safeguards at the time of the accident.

▉ The law is well settled, and to the effect, that a carrier is not liable for the result of ordinary jolts or jerks incident to the starting or stopping of its conveyances in the usual and customary manner.

"It has been decided that street cars need not wait until passengers are seated before starting. Herbich v. North Jersey St.Ry.Co. [65 N.J.Law, 381] 47 A. 427. If defendant exercised due care in the operation of the car, it is clearly not responsible for plaintiff's fall and injury. Cars cannot be started without some jerk, and cannot be run in a curve without developing a centrifugal force. The dangers from these causes are incident to traveling on the cars, and a traveler assumes the risk of them." Sharp v. New Orleans City R. Co., 111 La. 395, 35 So. 614, 100 Am.St.Rep. 488.

The above language was approved by the Supreme Court in Vincent v. New Orleans Ry. & Light Co., 134 La. 654, 64 So. 654.

▉ Unless, therefore, the plaintiff has succeeded in establishing the fact of an unusual or extraordinary jolting or jerking or otherwise sudden, violent, and unanticipated movement of the defendant's bus, there can be no recovery. Vincent v. New Orleans Ry. & Light Co., supra. On the record before us we are of opinion that the plaintiff has failed to establish the essential elements of his case. We cannot say that the bus started with unusual violence or that its movement away from the sidewalk and towards the center of the street in the line of traffic was abrupt, and at a sharp angle and so executed as to be calculated to throw plaintiff off his balance by an unanticipated movement requiring more than the usual stability to maintain his equilibrium. We see nothing in the record to indicate that the starting of the bus was unusual in any respect, and we believe the plaintiff's fall was due to his failure to guard against the normal movements of the bus.

In Nee v. New Orleans Public Service, Inc., 11 La.App. 1, 123 So. 135, 136, we said:

"The evidence as to the sudden stopping or starting of the car is not convincing, and shows that there was nothing unusual about its operation at that time. Cars must be stopped and must be started, and, if these operations are conducted without unusual jolt or jar, no liability results merely by reason of the fact that some person is thrown off balance."

See, also, Sharp v. New Orleans City R. Co., supra; Veith v. New Orleans Ry. & L. Co., 152 La. 47, 92 So. 730; Philips v. St. Charles St. R. Co., 106 La. 592, 31 So. 135; Vincent v. New Orleans Ry. & Light Co., supra.

■ The driver of the bus was under no obligation to wait until its passengers were seated before resuming its journey.

In Sharp v. New Orleans City R. Co., supra, is found the following:

"It has been decided that street cars need not wait until passengers are seated before starting. Herbich v. North Jersey St. Ry. Co. [65 N.J.Law, 381], 47 A. 427."

See, also, McRae v. Boston Elevated R. Co., 276 Mass. 82, 176 N.E. 773, 774; Belledeau v. Connecticut Co., 110 Conn. 625, 149 A. 127.

■ We attach no importance to the contention of plaintiff that the stanchions, subsequently placed in the bus by defendant's engineers, were necessary to the protection of passenger's, and that their absence, at the time of the accident, constituted a failure in the obligation of the defendant carrier towards its passengers involving it with liability for the injury sustained by plaintiff. It must be conceded that their presence supplied an additional means of support for passengers walking through the aisle of the moving bus toward their seats, but without the uprights the evidence is to the effect that there were hand holes in the seats which were available to passengers whose stability was affected by the movement of the bus. Moreover, a passenger who enters a bus or street car must contemplate its possible movement before he reaches his seat and, in the case of a bus operated as this one was by a trolley moving on overhead wires in the center of the streets it traverses through which electric current is supplied as motor power, a lateral as well as a forward movement must be anticipated and the passenger's equilibrium maintained at his risk against the effect of forward and lateral movement of no unnecessary or unusual violence.

We believe there was sufficient protection afforded passengers without the stanchions or uprights.

"It is the duty of a street railroad company as a carrier to carry a passenger safely to his destination, and to that end to provide suitable cars, machinery, means, and appliances, and see that they are kept properly in repair. It is not required to provide its cars with 'all known and approved machinery necessary to protect its passengers from injury.' But it is sufficient if it has all approved appliances that are in general use, and which are necessary for the safety of passengers * * *." Nellis on Street Railroads, vol. 1, par. 285, p. 561.

For the reasons assigned the judgment appealed from is annulled, avoided, and reversed, and it is now ordered that there be judgment herein in favor of the defendant dismissing plaintiff's suit, at his cost.

Reversed.