DO NOT PUBLISH

**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**13-104**

**LOUISIANA WHOLESALE FLORISTS, INC.**

**VERSUS**

**DEDE'S WHOLESALE FLORISTS, RICHARD G. DAVID,**
**AND DIONE W. DAVID**

\*\*\*\*\*\*\*\*\*\*\*\*

**APPEAL FROM THE**
**FIFTEENTH JUDICIAL DISTRICT COURT**
**PARISH OF LAFAYETTE, NO. 20117197**
**HONORABLE DURWOOD CONQUE, JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

**J. DAVID PAINTER**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of J. David Painter, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

**Ed W. Bankston**
**P.O. Box 53485**
**Lafayette, LA 70505**
**COUNSEL FOR DEFENDANT-APPELLANT:**
   **Dede's Wholesale Florist, Inc.**

**Steven G. Durio**
**Travis J. Broussard**
**P.O. Box 51308**
**Lafayette, LA 71308**
**COUNSEL FOR PLAINTIFF-APPELLEE:**
   **Louisiana Wholesale Florist**

**PAINTER, Judge.**

Defendant, Dede's Wholesale Florists, Inc. (Dede's), appeals the judgment of the trial court, finding it liable for an open account with Louisiana Wholesale Florists, Inc. (LWF). For the following reasons, we affirm the judgment of the trial court.

**FACTS**

During their marriage, Dione and Richard David operated Dede's, a retail florist's shop in New Iberia, Louisiana. In 1983, Dede's applied for and was granted membership in LWF, a florist's cooperative. Dede's initially purchased the required ten shares of stock and, over twenty-eight years of membership, accrued the maximum eighty shares of stock allowed by LWF. In 1992, Dede's executed a second membership application revising the details of its original application and pledging its LWF stock against any indebtedness to LWF. In 2009, the Davids divorced.

It is uncontested that Dede's ordered from LWF on at least a weekly basis and received the merchandise accompanied by invoices showing the amount of goods delivered and the price for each item. By the time it went out of business on September 30, 2011, Dede's had accrued a debt of $43,083.37 with LWF.

On December 14, 2011, LWF filed this suit on open account. Dione filed an answer, a cross-claim against Richard, and an exception of no cause of action. Richard filed an answer and cross-claim against Dione. The matter was tried on September 4, 2012, after which the trial court found in favor of LWF. A rule to fix attorney's fees was heard on October 29, 2012, and the court signed Dede's motion for suspensive appeal at the time.

1

# DISCUSSION

*Open Account*

La.R.S. 9:2781 provides for the collection of sums due on open account as follows:

A. When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant. Citation and service of a petition shall be deemed written demand for the purpose of this Section. If the claimant and his attorney have expressly agreed that the debtor shall be liable for the claimant's attorney fees in a fixed or determinable amount, the claimant is entitled to that amount when judgment on the claim is rendered in favor of the claimant. Receipt of written demand by the person is not required.

B. If the demand is forwarded to the person by first class mail to his last known address, a copy of the demand shall be introduced as evidence of written demand on the debtor.

C. If the demand is made by citation and service of a petition, the person shall be entitled to pay the account without attorney fees by delivering payment to the claimant or the claimant's attorney within ten days after service of the petition in city courts and fifteen days after service of the petition in all other courts.

D. For the purposes of this Section and Code of Civil Procedure Articles 1702 and 4916, "open account" includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions. "Open account" shall include debts incurred for professional services, including but not limited to legal and medical services. For the purposes of this Section only, attorney fees shall be paid on open accounts owed to the state.

E. As used in this Section the following terms shall have the following meanings:

(1) "Person" means natural and juridical persons.

(2) "Reasonable attorney fees" means attorney fees incurred before judgment and after judgment if the judgment creditor is required to enforce the judgment through a writ of fieri facias, writ of seizure and sale, judgment debtor examination, garnishment, or other post-judgment judicial process.

2

F. If the judgment creditor incurs attorney fees after judgment on the principal demand associated with enforcement of the judgment, the judgment creditor may obtain judgment for those attorney fees and additional court costs by filing a rule to show cause along with an affidavit from counsel for the judgment creditor setting forth the attorney fees incurred. If the judgment debtor does not file with the court a memorandum in opposition at least eight days prior to the hearing on the rule, the court may award the attorney fees and court costs as prayed for without the necessity of an appearance in court by counsel for the judgment creditor. The rule to show cause shall include notice to the judgment debtor of the consequences under this Subsection of not timely filing a memorandum in opposition. The amount of any post-judgment award of attorney fees and costs shall be added to the total to be recovered on the principal demand through any existing writ or garnishment proceedings.

This court in *Scofield, Gerard, Singletary & Pohorelsky, L.L.C. v. Barr*, 10-1347, p. 3 (La.App. 3 Cir. 3/9/11), 58 So.3d 1127, 1129 (quoting *Metal Coatings, LLC v. Petroquip Energy Svcs*, *LP*, 06-1108,(La.App. 3 Cir. 11/21/07), 970 So.2d 695), stated that:

In order to prevail in a suit on an open account, the creditor must first prove the account by showing that the record of the account was kept in the course of business and by introducing evidence regarding its accuracy. Once a prima facie case has been established by the creditor, the burden shifts to the debtor to prove the inaccuracy of the account or to prove the debtor is entitled to certain credits. *Jacobs Chiropractic Clinic v. Holloway*, 589 So.2d 31 (La.App. 1 Cir.1991).

At trial, Plaintiff elicited testimony from Dione that she had been owner of Dede's along with her ex-husband, Richard. She stated that while owner, she did the bookkeeping, payroll, purchasing, design work, and delivery for Dede's. She testified that Dede's had an open account with LWF and that Dede's purchased from LWF weekly and sometimes daily, but on average twice a week. She stated that Dede's received a monthly billing statement from LWF and normally paid as agreed. Dione further testified that as LWF members, Dede's received shares of stock from LWF and got a small discount on purchases, accumulating the maximum eighty shares allowed to a member. During the last three or four years of

3

operations, Dede's signed the rebates received from LWF back to LWF as payment on account. She agreed that a past due balance remained on Dede's account with LWF in the neighborhood of $40,000.00. She stated that she had received the demand letter on the open account and that she had never disputed the amount of the account presented in the demand letter.

Richard agreed that he owned stock in Dede's. He further testified that he knew that LWF was one of Dede's main suppliers. He stated that he did not remember receiving a demand letter sent by counsel for LWF but agreed that it was his signature on the return receipt. He further admitted that certain property owned by Dede's was in his possession, including a Chevrolet Corvette automobile and two pieces of immovable property.

Merlin Leger, general manager of LWF, also testified at trial that the account was kept in the ordinary course of business and detailed how the account was kept, the amount owed on the account, and the credits made to the account.

The evidence adduced by LWF establishes a prima facie case. Therefore, the burden shifted to Dede's to prove the inaccuracy of the account or to show that it was entitled to additional credits. Dede's attempted to carry its burden by arguing that a piercing of the corporate veil resulted in Dione being responsible for payment and, alternatively, that the contract contained a liquidated damages clause which provided for the value of the member's stock to be the only amount payable at the time of a breach of contract.

*Piercing the Corporate Veil*

Dede's asserts on appeal that the trial court erred in disregarding a piercing of Dede's corporate veil that occurred in the partition of the community, which was before a trial court in a different judicial district. Dede's asserts that on May 19, 2009, Dione was granted control of Dede's as managing spouse and that Richard

4

had no control over the corporation and did not benefit from the open account. It argues that three years later, the trial court reversed and awarded the by then defunct business to Richard. As a result, Dede's argues that Dione should be held responsible for the debt.

Piercing the corporate veil is a radical remedy by which a court, under certain very limited circumstances, may ignore the corporate structure to impose liability on individual shareholders for the actions of the corporation. *Gaddy v. Universal Cable Sys., Inc.*, 47,088 (La.App. 2 Cir. 9/7/12), ___ So.3d ___.; *Charming Charlie, Inc. v. Perkins Rowe Assoc.*, L.L.C., 11-2254 (La.App. 1 Cir. 7/10/12), 97 So.3d 595; *Interstate Battery Sys. of America, Inc. v. Kountz*, 11-636 (La.App. 3 Cir. 11/2/11), 78 So.3d 200. Our review of the record reveals no evidence either that Dede's corporate veil was pierced by the court in the community property litigation. Further, the record contains no evidence that Dede's did anything to warrant piercing the corporate veil. Additionally, no law has law been cited to suggest that a piercing of corporate veil in a different suit and court would have any effect on a suit on an open account owed by the corporation. Counsel argued Richard was forbidden from participating in the operation of Dede's pending the partition of the community and that at the partition hearing, he was awarded 100% of the stock in Dede's. However, no judgment of the Iberia Parish Court was introduced into evidence at the trial and none appears in the record on appeal. Even if true, this would not constitute a piercing of the corporate veil. A transcript of a hearing held on May 19, 2009, appears as an exhibit to Dede's opposition to a motion for summary judgment filed by Plaintiff. However, Dede's does not point to specific language in the transcript that supports the conclusion that the trial court pierced the corporate veil, and we find none. Therefore, this court is unable to reach any conclusion as to the contents of the trial

5

court's judgment resulting from the May 19, 2009 hearing or its effect on the matter before this court.

*Contractual Liquidated Damages Clause*

Dede's also asserts that the parties had agreed in the membership application filed with LWF to a liquidated damages clause limiting any damages for unpaid debt to the amount of the stock held by LWF on behalf of the member/debtor.

Dede's, in its appellate brief, cites the following language from the membership application as creating a liquidated damages clause:

> I have read and understood all of the provisions of the Articles of Incorporation and By-Laws of Louisiana Wholesale Florists, Inc., and agree to be bound by and comply with all such regulations, including but not limited to the requirements regarding stock privileges, credit limitations and all other requirements for membership, as well as any which might from time to time be enacted.
>
> I/we understand and agree that if this application is accepted, stock of Louisiana Wholesale Florist, Inc. will be issued in my/our name, and such stock will be held by Louisiana Wholesale Florist, Inc. as collateral for any indebtedness which we may incur to Louisiana Wholesale Florist, Inc. Any credit extended to me/us will be in accordance with the regulations established by the Board of Directors of Louisiana Wholesale Florists Inc.
>
> In consideration of and as collateral for any credit extended, I/we hereby pledge to Louisiana Wholesale Florists, Inc. any and all stock of Louisiana Wholesale Florists, Inc., including any accrued or subsequently accruing dividends, issued to me/us or in my/our name(s). In the event of any default or delinquency by me/us, as determined by the credit requirements and regulations of Louisiana Wholesale Florists, Inc., I/we specifically authorize Louisiana Wholesale Florists, Inc., to sell such stock, at public or private sale, and without the necessity for demand, notice, appraisement or judicial proceedings, and to apply the proceeds thereof to any indebtedness (including any accrued interest, costs of collection, attorney's fees and expenses) which I/we might have to Louisiana Wholesale Florists, Inc. Any surplus remaining after deduction of such amounts due, will be refunded to me/us.
>
> This agreement of pledge shall be irrevocable, and I/we warrant that the pledged collateral shall (kept) free from any liens or claims, and further agree and understand that any delay in exercise or waiver of rights by Louisiana Wholesale Florists, Inc. shall be effective unless in writing, and that each and every provision hereof shall be

6

interpreted in such manner as to be valid and effective, and that the invalidity of any provision hereof shall not affect the validity of the remainder of this agreement.

Dede's asserts that this language creates a liquidated damages clause as contemplated by La.R.S. 3:137, which states that:

> The by-laws or the marketing contract of any association existing hereunder may fix, as liquidated damages, specific sums to be paid by the member or stockholder to the association upon the breach or threatened breach by him of any provision of the marketing contract regarding the sale or delivery or withholding of products; and may further provide that the member will pay all costs, premiums for bonds, expenses, and fees in case any action is brought upon the contract by the association. Such provisions shall be valid and enforceable in the courts of this State, and the clauses providing for liquidated damages shall be enforceable and shall not be regarded as penalties.

> In the event of any breach or threatened breach of a marketing contract by a member or other person, the association shall be entitled to an injunction to prevent the breach or further breach of the contract, and to a decree of specific performance thereof. Pending the adjudication of the action and upon filing a verified complaint showing the breach or threatened breach, and upon filing a bond in the sum of one hundred dollars, the association shall be entitled to an injunction against the member or other person. The officiating judge may increase the bond to five hundred dollars after a hearing on five days notice to the parties, if justice demands the increase in the amount of the bond.

La.Civ.Code art: 13 states that: "Laws on the same subject matter must be interpreted in reference to each other." Therefore, in interpreting La.R.S. 3:137, we must also consider La.R.S. 3:136, which provides with regard to Cooperative Marketing Associations, that:

> A. The association and its members may make and execute marketing contracts requiring the members to sell, for any period of time not over ten years, all or any specified part of their agricultural products or specified commodities exclusively to or through the association or any facilities created by the association. If they contract to sell to the association, title to the products shall pass absolutely and unreservedly, except for recorded liens, to the association upon delivery, or when put in merchantable condition, or at any other specified time if expressly and definitely agreed in the contract.

7

B. The contract may provide that the association may sell or resell the products delivered by its members, with or without taking title thereto, and pay over to its members the resale price, after deducting all necessary selling, overhead, and other costs and deductions, as defined in the contracts, and expenses including interest on preferred stock not exceeding the legal interest rate per annum, reserves for retiring stock, other proper reserves, and interest not exceeding the legal interest rate per annum upon common stock.

Reading the language of the membership agreement in light of the provisions of these statutes, we find that the cooperative marketing association statutes are inapplicable. The agreement does not constitute the kind of contract contemplated by R.S.3:136 & 137. Nor does the language create an agreement for stipulated damages as set out in La.Civ.Code art. 2005: "Parties may stipulate the damages to be recovered in case of nonperformance, defective performance, or delay in performance of an obligation. That stipulation gives rise to a secondary obligation for the purpose of enforcing the principal one."

We agree with the trial court that the language of the agreement provides for a pledge of stock against indebtedness rather than a liquidated damages clause. "The pledge is a contract by which one debtor gives something to his creditor as a security for his debt." La.Civ.Code art. 3133.

The creditor cannot, in case of failure of payment, dispose of the pledge; but when there have been pledges of stock, bonds or other property, for the payment of any debt or obligation, it shall be necessary before such stocks, bonds or other property so pledged shall be sold for the payment of the debt, for which such pledge was made, that the holder of such pledge be compelled to obtain a judgment in the ordinary course of law, and the same formalities in all respects shall be observed in the sale of property so pledged as in ordinary cases; but in all pledges of movable property, or rights, or credits, stocks, bonds or other movable property, it shall be lawful for the pledger to authorize the sale or other disposition of the property pledged, in such manner as may be agreed upon by the parties without the intervention of courts of justice; provided, that all existing pledges shall remain in force and be subject to the provisions of this act.

The testimony at trial was that the LWF stock owned by Dede's was pledged against Dede's debts to LWF and that the stock was sold and the amount credited to the open account.

## CONCLUSION

We find, therefore, that Dede's has failed to carry its burden of proving the inaccuracy of the account or that additional credits were due. Therefore, the trial court correctly rendered judgment in favor of LWF. As a result, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Defendant-Appellant, Dede's.

**AFFIRMED.**