CRAIN, J.
|2The defendant, Charles Gaspard, was found guilty as charged of second degree murder after pleading not guilty and not guilty by reason of insanity, and was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The defendant appealed and this court found no merit in his argument that there was insufficient evidence to support his conviction.[2] State v. Gaspard, 11-2098 (La.App. 1 Cir. 12/28/12), 2012 WL 6737838, p. 3. However, this court held that the defendant could not simply withdraw the request for a sanity hearing once invoked and, as such, the trial court erred in allowing the matter to proceed to trial without holding a contradictory hearing to decide the issue of the defendant’s mental capacity to proceed. Accordingly, we conditionally affirmed the defendant’s conviction and sentence, and remanded to the trial court to determine if there was sufficient evidence to make a meaningful determination of the defendant’s competence at the time of his trial, and if so, to hold a nunc pro tunc hearing and make a competency ruling. Gaspard, 2012 WL 6737838 at pp. 5-6.
*411 On remand, the trial court found there was sufficient information to make a meaningful determination of the defendant’s competency at the time of trial, then conducted a nunc pro tunc hearing and found that the defendant was competent to stand trial. The defendant has again appealed. We affirm the conviction and sentence.
WHETHER THERE WAS SUFFICIENT EVIDENCE TO CONDUCT A NUNC PRO TUNC HEARING
The defendant argues that the trial court erred in ruling there was sufficient evidence available to make a meaningful determination of his competency | s“retroactive to the trial date.” According to the defendant, the dynamic nature of his illness made it impossible to determine, in 2014, if he was competent during his trial, which was held in 2010.
If the trial court abuses its discretion in failing to investigate a defendant’s claims of incompetency before trial, a nunc pro tunc hearing on the issue of competency may be allowed if a meaningful inquiry into the defendant’s competency can still be had. See State v. Snyder, 98-1078 (La.4/14/99), 750 So.2d 832, 855. A meaningful determination is possible where the state of the record, together with such additional evidence as may be relevant and available, permits an accurate assessment of the defendant’s condition at the time of the original state proceedings. Id. It is the State’s burden to show the court that the tools for making a rational decision on competency are available. Id. Whether a trial court can hold a meaningful retrospective competency hearing is necessarily decided on a case-by-case basis, and the trial court is in the best position to make that determination. Id. This includes consideration of the existence of contemporaneous medical evidence, the recollections of non-experts who had the opportunity to interact with the defendant during the relevant period, statements by the defendant in the trial transcript, and the existence of medical records. If sufficient contemporaneous information is available, the passage of time is not an insurmountable obstacle. Id.
At the February 5, 2014 hearing to determine if a nunc pro tunc competency hearing was possible, the State introduced into evidence the entire record of the proceedings, which included the transcript of the hearing on the defendant’s motion to recuse Judge Jane Triche-Milazzo that was conducted by Judge Alvin Turner, Jr. on August 4, 2010, the first day of trial. That transcript included extensive testimony by the defendant (on both direct and cross examination), discussion between Judge Turner and the defendant, as well as testimony by Judge Triche-Milazzo.
|4The State specifically offered the reports of Doctors Thomas C. Fain, Charles P. Vosburg, and Clay Kelly, who had been appointed to a sanity commission in 2009, evaluated the defendant before the trial court allowed him to rescind the commission, and submitted their reports to the court. In his report, Dr. Fain concluded that the defendant was capable of assisting his attorney and participating in his own defense, and that the defendant more likely than not knew right from wrong at the time of the crime. Dr. Fain further opined, “[t]here is nothing in his presentation to suggest any aberration in mental state that he cannot logically choose his own fate, when alternatives are clearly explained to him.” Doctors Vosburg and Kelly likewise concluded that the defendant was competent to stand trial, stating that the defendant could proceed to trial if given an attorney with which he was able to communicate and trust.
Dr. Vosburg testified at the February 5, 2014 hearing, explaining that he and Dr. *412 Kelly evaluated the defendant on September 3, 2009, to determine the defendant’s competency, and rendered a report dated October 12, 2009. They evaluated the defendant again on July 28, 2010 (during the week prior to the start of trial), to determine the defendant’s sanity at the time of the offense, and rendered a report dated August 2, 2010. Dr. Vosburg testified that he and Dr. Kelly had since reviewed the record of the proceedings and, based on the transcript of the recusal hearing wherein the defendant made references to conspiracies against him, would need to reexamine the defendant “to flesh out in more exacting detail ... [the defendant’s] perception in and around the time of his trial.”
The trial court concluded the State met its burden of proving that there existed sufficient evidence for a retroactive determination of competency. The trial court pointed to the doctors’ reports, some of which were rendered the week before trial, the transcript of the recusal hearing, and the availability of medical records that had not yet been introduced. The trial court ruled that it would allow | ^Doctors Vos-burg and Kelly to conduct an additional evaluation, which would provide even further evidence, Furthermore, Judge Triche-Milazzo, who presided over the defendant’s trial, was available to testify at the February 5, 2014 hearing. Considering the evidence available we find no error in the trial court’s ruling that a meaningful inquiry into the defendant’s competency could still be had, and in allowing the mine pro tunc hearing.
This assignment of error is without merit.
COMPETENCY
In his second assignment of error, the defendant contends the trial court erred in determining that he was competent to stand trial in August 2010. The defendant argues that the competency evaluation performed did not include certain testing, and was therefore insufficient to support a determination that he had a rational, as distinguished from a factual, understanding of the proceedings.
A criminal defendant’s constitutional right to due process encompasses the right not to be tried while legally incompetent. Medina v. California, 505 U.S. 437, 448, 112 S.Ct. 2572, 2579, 120 L.Ed.2d 353 (1992), State v. Carmouche, 01-0405 (La.5/14/02), 872 So.2d 1020, 1041. This means that a person whose mental condition is such that he lacks the capacity to understand the nature of the proceedings against him, to consult with counsel, and to assist in preparing his defense, may not be subjected to trial. See Drope v. Missouri, 420 U.S. 162, 171, 95 S.Ct. 896, 903, 43 L.Ed.2d 103 (1975); State v. Holmes, 06-2988 (La.12/2/08), 5 So.3d 42, 54, cert. denied, 558 U.S. 932, 130 S.Ct. 70, 175 L.Ed.2d 233 (2009). In other words, a defendant must be “legally competent” in order to proceed to trial. Holmes, 5 So.3d at 54.
Louisiana law presumes that a defendant is sane and competent to proceed. See La. R.S. 15:432; Carmouche, 872 So.2d at 1041. It is the defendants burden to prove by a preponderance of the evidence his incapacity to proceed to trial, | ¿which exists when, as a result of mental disease or defect, the defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense. See La.Code Crim. Pro. art. 641, Holmes, 5 So.3d at 55,
In State v. Bennett, 345 So.2d 1129, 1138 (La.1977) (on rehearing), the Louisiana Supreme Court explained that “[t]he decision as to a defendant’s competency to stand trial should not turn solely *413 upon whether he suffers from a mental disease or defect, but must be made with specific reference to the nature of the charge, the complexity of the case and the gravity of the decisions with which he is faced.” The “crucial question,” the court stated, is “[W]ere [the] defendant’s capabilities sufficient to give him a rational as well as factual understanding of the proceedings against him and to enable him to consult with counsel with a reasonable degree of rational understanding?” Bennett, 345 So.2d at 1137. The court instructed that a determination of whether the defendant is fully aware of the proceedings against him should include consideration of the defendant’s understanding of the nature of the charge and appreciation of its seriousness, the defendant’s understanding of the defenses available, the defendant’s ability to distinguish and understand the consequences of a guilty and not guilty plea, the defendant’s awareness of his legal rights, and the defendant’s understanding of the range of possible verdicts and the consequences of conviction. Bennett, 345 So.2d at 1138. The determination of whether a defendant is able to assist in his defense should include consideration of the defendant’s ability to recall and relate facts pertaining to his actions and whereabouts at certain times, assist counsel in locating and examining relevant witnesses, maintain a consistent defense, listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements, make simple decisions in response to well-explained alternatives, testify in his own defense (if necessary to defense strategy), and the extent, if any, to which his l7mental condition is apt to deteriorate under the stress of trial. Bennett, 345 So.2d at 1138.
A trial court may receive expert medical testimony on the issue of a defendant’s competency to proceed to trial; however, the ultimate decision regarding competency rests with the trial court alone. See La.Code Crim. Pro. art. 647; Holmes, 5 So.3d at 55. A reviewing court owes the trial court’s determinations as to the defendant’s competency great weight, and the trial court’s ruling thereon will not be disturbed on appeal absent a clear abuse of discretion. Carmouche, 872 So.2d at 1041.
As previously set forth, the trial court had before it the 2009 reports of Doctors Fain, Vosburg, and Kelly, all of whom concluded that the defendant was competent to stand trial. Doctors Vosburg and Kelly submitted a second joint report in 2010, in which they concluded that the defendant was sane at the time of the offense. At the nunc pro tunc hearing, Dr. Kelly explained that although the report was rendered after an evaluation to determine the defendant’s sanity at the time of the offense, that evaluation included a threshold determination that the defendant was competent to proceed with the plea of not guilty by reason of insanity. Dr. Kelly further explained that the 2009 and 2010 reports by he and Dr. Vosburg were rendered with the knowledge that the defendant was not taking prescribed medications.
Both Phyllis Southall and Susan Kutcher Jones, attorneys who represented the defendant during trial proceedings, testified that they were concerned about the defendant’s competency. Southall described the defendant as unable to make simple decisions, to assist in locating witnesses, or to cooperate, which precluded them from developing a defense. She stated that when she attempted to discuss the crime, the proceedings, and the possible punishment, he would begin talking about conspiracies. This prompted her to proceed with amending the defendant’s not Isguilty plea to add a plea of not guilty by *414 reason of insanity, despite the defendant possibly changing his mind about doing so. She testified that the defendant discussed withdrawing the insanity plea, but she refused to do so, and that the defendant asked and was ultimately allowed to withdraw the plea against her advice. The request for sanity commission was likewise withdrawn over her objection.
In January 2010, Southall was removed as the defendant’s counsel and replaced with Jones, a private lawyer. Jones stated that when she and the defendant went over the file she received from Southall, the defendant became convinced that things were missing. She explained that conspiracy theories then started, which extended to the trial judge, the Sheriff, the District Attorney, the courtroom bailiff, the doctor who performed the autopsy on the defendant’s mother, his prior counsel, and at some point, her. Prior to trial, Jones convinced the defendant to change his plea to not guilty by reason of insanity, but only after an argument.
Jones further described the defendant as uninterested in his defense, with his attention instead focused on using his trial proceedings to protect a girl in California who he met over the internet, and who he believed was being abused by her mother. At the February 5, 2014 hearing, defense counsel made a motion, at the defendant’s request, to take the depositions of two witnesses in California. The State objected and the defendant took the stand to testify as to the relevance of the deposition testimony. The defendant identified the witnesses as Daveigh Schwallier and Cathy Chase, and explained that he had never met them in person, but communicated with them over the internet via the social networking site MySpace. The defendant testified that he had intended to testify at trial in his own defense, but when he learned on the first day of trial that he would not able to call the two witnesses, he “became incompetent.” The defendant expected Chase to | ntestify that she manipulated the defendant and her daughter, Schwallier, much the same way the judge and counsel manipulated him, and that the combined testimony of the witnesses would establish a pattern of mental incompetence. Jones testified, however, that she believed the defendant was interested in subpoenaing the young lady so that he could protect her and that it had nothing to do with preparing his defense. She described the defendant as visibly upset upon realizing that the trial would proceed without the girl being subpoenaed and stated she did not believe he was capable of testifying in his own defense.
At the recusal hearing held on the first day of trial, the defendant referred to a conspiracy against him. Upon reviewing the transcript of that hearing in advance of the February 5, 2014 hearing, Doctors Vosburg and Kelly determined that they needed to interview the defendant again in order to make a complete evaluation regarding the defendant’s competency. After conducting the interview, Dr. Kelly testified that they believed that the defendant’s explanation of what he meant in using the term “conspiracy” was neither bizarre nor delusional. Dr. Kelly testified their opinion that the defendant was competent remained unchanged.
Judge Triche-Milazzo, who presided over the defendant’s trial, testified that she recalled the defendant’s conflict with Southall, explaining that she replaced Southall as his attorney based on Dr. Vos-burg’s report regarding the defendant being competent to proceed with a lawyer with whom he felt comfortable. She further noted that she did not observe a similar conflict between the defendant and his private counsel, Jones. Judge Triche-Milazzo testified that she did not notice the *415 defendant exhibiting diminished capacity or paranoid tendencies. The judge stated that she noticed no significant changes in the defendant’s demeanor, and that his demeanor and presentation to the court remained consistent.
Based on the testimony and evidence presented at the February 5, 2014 nunc pro tunc hearing, the trial court determined that the defendant was competent at the Imtime of his 2010 trial. In thorough written reasons for judgment, the trial court detailed the testimony and evidence on which it relied, describing the transcript of the recusal hearing held on the day before trial as “most compelling.” The trial court quoted the colloquy between the defendant and Jones in which the defendant accurately described the charges against him and the procedural history of his case, including several attempts by the defendant to represent himself. The trial court further pointed to the defendant’s testimony on discovery, his rights, and the conspiracy theory, noting that Dr. Kelly testified that the defendant’s statements about the conspiracy theory did not rise to the level of finding that the defendant had lost touch with reality. The trial court concluded that, “While [the defendant] may seem odd, he was not incapable of assisting with his defense.”
On appeal, the defendant argues that the trial court relied on competency examinations that were fatally flawed because they did not include psychological testing. At trial, Dr. Fain testified as an expert in the field of clinical, forensic, and medical psychology, and explained that when he evaluated the defendant in July of 2009, the defendant expressed his opposition to a plea of not guilty by reason of insanity. Because the defendant did not want to go forward with the plea, Dr. Fain did not perform any testing to assess the defendant’s competency to stand trial. The defendant argues that without this testing, it cannot be determined whether he had a rational understanding of the proceedings or could consult with his counsel with a reasonable degree of rational understanding, as is required by the supreme court’s decision in Bennett.
We reiterate that, in Bennett, the supreme court expressed that the crucial question to be answered is, “[W]ere [the] defendant’s capabilities sufficient to give him a rational as well as factual understanding of the proceedings against him and to enable him to consult with counsel with a reasonable degree of rational understanding?” Bennett, 345 So.2d at 1137. We disagree with the defendant’s Imposition that psychological testing is a prerequisite to answering that question. If that were the case, a criminal defendant could effectively manipulate the proceedings against him by simply refusing to participate in psychological testing.
Dr. Fain indicated that he considers the individual defendant in determining which competency instrument is suitable in a particular case. For example, he explained, some cases may require an intellectual screening, but in other cases such a screening is not necessary. In this case, Dr. Fain acknowledged that he did not employ any of the competency instruments. However, Dr. Fain did conduct an assessment interview with the defendant, during which the defendant clearly explained his direction and choices. Dr. Fain testified that he found the defendant to be “very aware of the charges and the circumstance[s] and that [the defendant] had his own impression about what he thought was in his best interest.” Dr. Fain explained:
I thought he would be competent to stand trial, and clearly he was understanding the legal process and possible *416 implications of a “guilty” or “not guilty” plea. He was concerned about what his outcome might be if he were to even get the plea of “not guilty/not guilty by reason of insanity.” He knew the implications of that. So, I thought he could participate with a defense attorney in his own interest. He certainly presented his interests to me in a clear, cogent manner, clear-minded manner.
At the nunc pro tunc hearing, Dr. Kelly testified that, as a psychiatrist, he did not perform psychological testing on the defendant. Dr. Kelly went on to describe his evaluation of the defendant, and, like Dr. Fain and Dr. Vosburg, concluded that the defendant was competent. Dr. Kelly noted that neither he nor Dr. Vosburg had seen any evidence that the defendant did not understand the proceedings, and despite the defendant’s reference to a conspiracy theory at the recusal hearing, there was no evidence that the defendant was delusional or had a break with reality.
After reviewing the entire record and the trial court’s written reasons for judgment, we agree that the defendant failed to carry his burden of proving his incapacity to stand trial by a preponderance of the evidence. See Carmouche, 872 So.2d at 1041. The medical testimony as well as the other evidence presented supports a conclusion that the defendant’s capabilities were sufficient to give him a rational as well as factual understanding of the proceedings against him and to enable him to consult with counsel with a reasonable degree of rational understanding. We find no abuse of discretion in the trial court’s finding that the defendant was competent to stand trial.
The defendant additionally argues that as trial progressed, his mental condition deteriorated such that his competency should have been reconsidered on the third day of trial. The argument that the trial court failed to adequately consider defense counsel’s concern that defendant was unable, as trial progressed, to assist in his defense because of his fixations on alleged conspiracy theories, was raised in the defendant’s original appeal. See Gaspard, 2012 WL 6737838 at p. 3. In our prior opinion, this court set forth:
On the morning of the third day of trial, defense counsel asked the trial court to reconsider defendant’s competency to proceed in light of her opinion “that his delusions have increased and that he cannot assist counsel....” Defense counsel stated that she believed defendant’s concentration on “conspiracy theories have increased, at least over [her] representation with him and since the trial started.”
After hearing arguments by both parties, the trial court denied defense counsel’s motion for a more detailed competency proceeding. The trial judge noted that Dr. Vosburg had reevaluated defendant on July 28, 2010 to assess defendant’s sanity at the time[ ] of the offense and that he made no observations with respect to defendant’s competency to stand trial. The trial judge stated that she believed Dr. Vosburg would have noted at that time any substantial change in defendant’s status or his ability to communicate or participate at trial. Therefore, the trial court concluded that defense counsel had made no showing of a substantial change in defendant’s competency.
Gaspard, 2012 WL 6737838 at p. 5 (footnote omitted).
haSince that time, the trial court has conducted the nunc pro tunc hearing, at which Dr. Kelly testified that he and Dr. Vosburg reexamined the defendant based on testimony by the defendant at the recu-sal hearing, and because the conspiracies had come up during deliberations between *417 the defendant and his counsel. After that examination, Dr. Kelly and Dr. Vosburg maintained their opinion that the defendant was competent.
The transcript of the defendant’s trial reveals that defense counsel’s request to reconsider the defendant’s competency was made on the morning of the last day of trial, just before the State presented its final witness, Dr. Cynthia Gardner, who performed the autopsy on the defendant’s mother. The trial court recognized that the defendant was likely under extreme stress, just as any other defendant would be during the course of his trial, but denied the motion because there had been no showing of a substantial change. We find no error in the trial court’s ruling. Furthermore, we find that the nunc pro tunc hearing held on remand establishes that the defendant presented no evidence sufficient to overcome the presumption that he was competent to proceed during all phases of the trial.
This assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.

. The facts concerning the defendant's offense are set forth in this court's prior opinion. In sum, the defendant admitted that he struck his mother, who died from the injuries the defendant inflicted. This court found no error in the jury’s determination that the defendant attacked his mother with the specific intent to kill or inflict great bodily harm. Gaspard, 2012 WL 6737838 atpp. 1-3.